# W. H. CORBURN *v.* O. B. CRITTENDEN.

62  125
d76  728

1. TAX SALE. *List of lands. Defective certificate of tax collector.*

   The fact that a tax collector's certificate to a list of lands sold to the State for taxes is not dated does not vitiate the sales reported in such list.

2. SAME. *List of lands. Defective certificate of auditor.*

   And the failure of the certificate of the auditor of public accounts to show the date of the reception of such list in his office does not invalidate the sales embraced in the list.

3. SAME. *List of lands. When sent to and received by auditor. Presumption.*

   In the absence of proof as to the time when such a list was sent to or received by the auditor, it will be presumed that the same was sent as directed by law and duly received.

4. SAME. *Several lots sold together. One tax. Assessment. Presumption.*

   The sale of three town lots together for a single tax and costs is not illegal if the lots were assessed together for a single sum as one tract of land, and in the absence of proof it will be presumed that the assessment was thus made.

5. SAME. *For excessive taxes. Effect. Tender.*

   A sale of land for an amount of taxes and costs in excess of what is due thereon is not invalid if there was no tender of the legal amount. Code 1880, ¿ 525.

6. AUDITOR'S DEED. *Statement indorsed thereon. Statute construed. Case in judgment.*

   Section 562 of the Code of 1880 provides that "the auditor shall make a statement on each conveyance (of land) made by him of the amount of State taxes and damages thereon, and of the amount of county taxes and damages thereon, and of any other taxes and damages thereon; * * * and such conveyance shall not be valid unless it has been dealt with as herein provided." To meet the requirements of this statute, the auditor indorsed upon a certain deed a statement as follows: "State tax, general fund, one dollar and thirty-one cents; State tax, school fund, eighty cents; county tax, five dollars and seventy-five cents; No. 2 levee tax, two dollars and thirty-one cents." *Held,* that this was a substantial compliance with the statute, notwithstanding the damages on the several taxes were not separately itemized, but were included with the taxes respectively.

7. TAX TITLE. *Ejectment thereon. Defense. Irrelevant evidence.*

   In an action of ejectment by the purchaser of a tax title to obtain possession of one of several lots of land sold together for a single tax, evidence of the respective values of the lots, of the ownership thereof by different persons,

and of the exemption from taxation of a railroad right of way over the lot sued for at the time of the sale for taxes, is irrelevant and inadmissible for the purpose of showing such sale to be invalid.

8. BOARD OF SUPERVISORS. *Legality of meetings. Presumption.*

A meeting of a board of supervisors not affirmatively shown to have been illegal is presumed to have been legal. *Brigins* v. *Chandler*, 60 Miss. 862, cited.

9. SAME. *Organization of meetings. Evidence thereof. Presumption.*

The caption of the minutes of a meeting of a board of supervisors, and not the orders made at the meeting, should show the organization of the board according to law; and where the orders only of such board, not made at a regular meeting, are introduced in evidence in a case, and there is no proof of notice given for a special meeting, it is presumed that the caption of the minutes, if produced, would show that such notice was given.

10. SAME. *Appointment of person to complete assessment. Time therefor prescribed.*

Where an assessor failed to complete the assessment roll as directed by the Revenue Act of 1878, and the board of supervisors appointed a person to complete the same, such board had the power under § 26 of that act to prescribe the time when the appointee should complete the roll and deliver it to the clerk of the board. .

11. ASSESSMENT OF TAXES. *Failure of assessor to complete. Appointed to continue. Effect.*

Where, upon the failure of an assessor to complete the assessment which it was his duty to make, the board of supervisors, under the Revenue Act of 1878, appointed the delinquent himself to complete and return the assessment, such appointment, though very reprehensible, does not render the assessment invalid after its completion. *Wolfe* v. *Murphy*, 60 Miss. 1, reiterated.

APPEAL from the Circuit Court of Washington County.

HON. B. F. TRIMBLE, Judge.

O. B. Crittenden brought this action of ejectment to recover of W. H. Corburn the possession of "Lot 11 in Block 20 of the Huntington and Leavally addition to the town of Greenville." At the trial the plaintiff in support of his title first introduced in evidence the list of lands sold by the sheriff and tax collector to the State on the 6th day of March, 1882, for the taxes due thereon for the year 1881, which list embraced the lot in controversy. He then introduced a deed dated the 7th of March, 1883, from the auditor of public accounts conveying to him the lot in controversy. Many

objections were made by the defendant to the admission of either the list of lands or the auditor's deed, and were overruled by the court, but they are sufficiently stated in the opinion of the court.

Then the defendant offered evidence to show the respective values of the lot sued for and two others sold with it for one tax, that the lots were owned by different persons at the time of such sale, and that there was a railroad right of way over Lot 11, which was exempt from taxation at the time of the sale. This evidence was excluded by the court on the ground of irrelevancy. The minutes of the board of supervisors relating to the assessment upon which the land in controversy was sold were put in evidence by the defendant with the view of showing the invalidity of that assessment. The substance and effect of such minutes will be found stated in the opinion of the court.

The verdict and judgment were for the plaintiff, and the defendant appealed.

*S. H. King,* for the appellant.

The original list of lands sold to the State is not certified as prescribed by law and did not vest title in the State.

The list *prescribed by the statute* is the instrument by which title is to be vested in the State, as under the former law the deed executed by the collector did. *Magoon* v. *Banks,* 59 Miss. 449. Code of 1880, § 523, after speaking of the list, says, " a *certified* list," " and when *such* list is corrected," and finishes by saying and *such* list, etc., " shall be in lieu of conveyances."

It is the list *certified* and *returned* to the clerk which vests title. *Gamble* v. *Witty,* 55 Miss. 33. Section 523, Code 1880, does not prescribe what the certificate shall contain which must accompany the list, but it does show what the list must contain. Section 1698, Code 1871, contained the whole matter in that section. Section 547, Code 1880, does prescribe what the certificate shall contain, " a list with his oath annexed that it is a correct list," (this was in Code 1871, § 1698, except the oath), "and that he has not received any taxes thereon from any person." Does this law contemplate two different kinds of lists? Prior to this provision of the law the collector was credited with those claims, from which its

absence will not exclude him.    We do not think that the placing of this certificate in  a  separate  section  was intended  as a  legislation changing the construction already placed upon § 1698, Code 1871, by this court, but  simply to add other parts to it, and to refuse an allowance to the collector  unless the requirements of  the statute in this particular were followed in the manner therein prescribed.    It is very proper  to  put  it  in  a  separate section.    If  the  different sections are to be construed as  a  whole, there can  be  no  question about the construction placed upon the  law  by us.    Code 1871, § 1698, says, " which list shall be certified under his hand to  be correct."    Code  1880, § 523, says, " A certified  list  shall  be  transmitted  to  the auditor," etc., " and such list vests title in the State."

The list shows that separate and distinct tracts were sold *in solido* for one single tax and costs.    The terms, " constituting a tract," now found in § 521, Code 1880, are not to be found in any former law, and must be construed with reference to  this case.    Another important  change  in  Code 1880, § 522, is to be noted : " Lands in cities and  towns  shall  be sold in lots."    See, also, *Montgomery* v. *Bird,* 31 Ark. 491 ;  *Walker* v. *Monroe,* 2 Dill. 256 ;  Burrough on Taxation  30–4 ;  Cooley  on Taxation 279.

The list of lands was not forwarded to the auditor within the time prescribed by law.

The auditor's deed is not such as is prescribed by law, because it fails to follow the requirements of Code 1880, § 562.    For changes in the laws upon this point reference is made to Acts 1878, p. 49 ; Code 1880, § 532 ;  Act 1878, p. 57, and Code 1880, § 562.

By Code 1880, § 562, the auditor is required to make " a *statement,*" etc., and shall present *such* conveyance *thus prepared,* " and the treasurer shall transcribe it, *as stated in said conveyance.*" " Unless the requirements are followed the conveyance shall be invalid."

How can the treasurer enter in his book the damages, unless the same appear in the conveyance ?    This section and §§ 563, 564, and 568 contemplate a thorough system of bookkeeping—

" And the treasurer shall place to the credit of the common school fund, etc.," and the damages.—Section 564.

If the auditor can dispense with the requirement about the damage item he can dispense with all of it. He can join them all together in one amount as well as joining the damages with some' other item.

He has joined in this deed all Block 27—Huntington and Leavally addition—to town of Greenville. How are we going to separate the damages? This is a separate item.

There is no valid assessment roll of lands of Washington County for the year 1879.

This meeting of the board of supervisors on the 8th of September was a special meeting and should have been called as special meetings are called. *Smith* v. *Nelson*, 55 Miss. 138.

The minutes were introduced to show that no such notice was given, and the counsel for appellee argued it was not necessary.

An adjournment order is a presumption that no such notice was given. *Gamble* v. *Witty*, 55 Miss. 26.

Again, first Monday in August being the time fixed by law (and of which all taxpayers must take notice at their peril) for filing objections, etc., in case the board of supervisors fix a different time other notice than the minutes of the board is necessary, and there being no other notice in this case, the board's action at this meeting is void.

This notice is a constitutional right. It is not customary that the taxpayer be heard before the assessment is made, but afterward. Cooley on Taxation 266. Of the meeting of this board he must have notice. Ib. 265. If by the law the board to equalize is to meet at one time and it meets at another time, when parties have no notice, actual or constructive, to appear, its action is invalid. Ib. 599–630. "And when a requirement has for its sole object the benefit of the taxpayer the necessity for a compliance with it cannot be made to depend upon the circumstances of a particular case, and the opinion of a court or jury regarding the importance of obedience to it in that instance—that method of construing statutes —would abolish all certainty." Ib. 280.

The statute, 'tis true, does not provide for any notice. Still, I think they should have notice other than the entry\upon the min-

62 MISS.—9

utes of the board. This court has said that the taxpayers have nothing to do with the meeting of the board to receive from the appointee the roll, and so long as the roll has been legally filed the board does not have to meet at all. If this be true, how are the taxpayers to know when they must appear before the board to have objections heard?

Defendant proves by the tax collector that he sold Lots 9, 10, and 11 *in solido uno flatu*—as it appears upon the tax list.

A large portion of Lot 11 was exempt from taxation and not liable to be assessed by the board of supervisors. The tax had been paid upon all the railroad property, and this portion was used and occupied by the railroad company continuously from the date of deed up to the present time.

At the time of assessment, levy, and sale, Lots 9, 10, and 11 belonged to different owners.

There was at the time of the levy and sale a great difference in the value of the different lots. Lots 9 and 10 were worth four times as much as Lot 11. Lots 9 or 10 were, either of them, worth ten times as much as the taxes and costs for which all of them were sold. Lot 11 was worth four or five hundred dollars when sold. The court erred in excluding this evidence. *Roberts* v. *Singleton,* 2 Cushman 438 ; *Moody* v. *Harper,* 3 Cushman 484; *Phillips* v. *Burrus,* 13 S. & M. 31 ; *Everman* v. *Robb,* 52 Miss. 654; *Simmons* v. *Catron,* 12 S. & M. 584; *Davis* v. *Vanarsdale,* 59 Miss. 369.

*William Griffin,* for the appellee.

The appellant's objections to the list of lands are :

1. " Because it was not certified as prescribed by law."

This objection was properly overruled. The form of the list meets the requirements of, and is properly certified to under, § 573, Code 1880.

2. " Because it shows upon its face that the costs and taxes assessed upon the property were in excess of that prescribed by law."

There was no " costs " at all assessed upon the property, and the list does not show the taxes to be excessive. Had they been,

though, the appellant could not now complain, as the legal amount due was not tendered the sheriff before sale. See § 575, Code of 1880, and *Carter* v. *Hadley*, 59 Miss. 130.

3. "Because the list was not forwarded to the auditor within the time prescribed by law."

In the absence of any proof to the contrary, it will be presumed that the list was forwarded in time; but if it had not been, the neglect could not avail the appellant. See *Wolfe* v. *Murphy*, 60 Miss. 18.

4. "The exclusion of the testimony of W. E. Hunt, sheriff and tax collector, as evidence, from the jury, to prove that the lots were sold *in solido* for a separate tax and costs."

The lots were assessed in 1879 as the property of Percy, Johnson & Ferguson, and the sheriff was bound to sell them as assessed.

It will be observed that all three of the lots were assessed to Percy, Johnson & Ferguson, and that they were bound to be sold by the sheriff as they were assessed, and were liable, under § 470, Code 1880, for the taxes due, whether they were assessed to the true owner or not.

5. The appellant objects to the auditor's deed, " because it failed to state upon it the amount of the State tax and damages thereon, and the amount of county taxes and the damages thereon, and the amount of other taxes and damages thereon, and the amount of the auditor's fees and commissions."

Section 567, when construed with §§ 561, 563, and 564, does not bear out this view of the law.

Section 561 directs the manner in which individuals are to proceed in redeeming or purchasing land from the auditor, and the price to be paid, viz.: "The amount of all taxes and costs for which the land was sold, and all accrued taxes and costs, with twenty-five per cent. added to the amount of taxes for which the land was sold." The twenty-five per cent., I apprehend, would come under the item of damages.

Where the purchaser pays the above amount he has fully complied with the requirements of the section, and can do no more.

Section 562 does not require that each separate tax shall have a

particular item of damages apportioned to it and set apart in the deed. The statute requires that the auditor shall make a statement of the amount of " State taxes and damages thereon, and the amount of county taxes and damages thereon," etc., but there is nothing in the section that would convey the meaning that the damages were intended to be placed as a separate item under each tax.

6. The action of the board of supervisors in reference to the assessment roll was legal throughout. The meeting on August 4 was a regular one. That of August 18 a special one, called by posting a notice for more than five days, etc., and as also the one held on 8th September, both of which latter two were under the authority of §§ 26 and 29, p. 37 Act 1878.

The objection that not sufficient notice was given the taxpayer to file objections to the roll is without merit.

Section 26 of the Act of 1878, p. 37, does not require that notice should be given, although notice was given, as shown by the order of August 18, and presumably a correct one, it was not necessary at all. See *Wolfe* v. *Murphy*, 60 Miss. 14–15, where this section is fully construed.

7. " The seventh objection to the ruling of the court is the exclusion of the evidence offered by the appellant to prove that a large part of Lot 11 sued for was exempt from taxation at the time of the sale to the State, the same having been sold to the Greenville, Columbus and Birmingham Railroad, and offered to prove that it was impossible to distinguish the legal from the illegal tax."

The lot was still liable to taxation, or at least that portion of it not sold to the railroad company. The levy was based on the assessment of 1879, and the sale was in conformity with the assessment. The owner had the privilege of appearing before the board of supervisors and having his assessment changed. This he neglected to do, and is now estopped from setting up an excessive tax or an illegal one. Code 1880, § 525.

8. The eighth objection to the ruling of the court is the exclusion of the. evidence to prove that " at the time of the levy and sale a great difference in the value of the lots existed ; that at the time of the sale Lots 9 and 10 were worth five times as much as Lot

11, and that at the time of the sale that Lots 9 and 10 were worth ten times as much as the tax and costs for which they were sold *in solido;* and that Lot 11, sued for, was worth four or five hundred dollars."

The value of the property can no way affect the sale. They were sold as assessed, and this was all that was required of the sheriff under § 522, Code 1880.

*Leroy Percy,* on the same side.

The appellant's objection to the introduction of the list of lands sold to the State was, " Because it showed upon its face that three separate and distinct tracts of land were sold *in solido* for one single tax and costs."

The list and the sheriff's testimony show how these lots were sold. The presumption is that the sheriff conformed to law in making the sale and sold the lands as they were· assessed, and if on the assessment roll Lots 9, 10, and 11 stood assessed to Percy, Johnson, & Ferguson, with a single valuation and a single tax for the three, the sheriff could not, in selling, apportion the tax among the three, but was obliged to offer for sale one lot, then two, and there being no bidders, the three for the single tax, and such a mode of assessment could not vitiate the assessment roll. (Act 1878, Revenue, § 18.)

The seventh objection made by appellant to the introduction of the deed from the auditor to appellee was " Because it fails to state on it the amount of State tax and damages thereon, and the amount of county tax and damages thereon, and the amount of other taxes and damages thereon, and the amount of auditor's fees and commissions, as prescribed by § 562, Code 1880."

Section 561, Code 1880, prescribes precisely what it is necessary for a purchaser from the State of land sold to the State for taxes to do in order to acquire all the title of the State to such land as it conveys. Section 562 requires certain indorsements on the back of the deed merely as a somewhat public method of bookkeeping between the auditor and the treasurer, to act as a check upon these officers, and it cannot be contended that the legislature by this section intended to make the penalty for a want of fidelity on the part

of one of the State's officers the loss of money by an innocent purchaser from her, or to throw useless impediments in the way of alienation on the part of the State.

The appellee having made out a *primâ facie* case, appellant then attempted to impeach it.    I will consider first the evidence he offered in the shape of extracts from the minutes of the board of supervisors in order to show the invalidity of the assessment roll. These extracts, as they appear in the body of the record, show nothing and mean nothing.    Some of them do not show from what meeting they are taken or that the board met with or without the proper notice, and do not in any manner affect the validity of the assessment roll; they are mangled and disjointed extracts, seemingly taken at random from the minutes of the board, and if they had been so offered in evidence in the circuit court should have been excluded as without point and irrelevant, but taken with the captions contained in the certificate of the clerk, which were read with them, they show the facts to be that on August 4, 1879, the same being the regular meeting of the board for receiving the assessment roll, the board met, and finding that the assessor had failed to complete his roll, they appointed R. G. Sims, the assessor, to complete said roll and return it by August 10, 1879.    Public Revenue Acts, 1878, § 26.

That on August 18, 1879, the board met, the same being a special meeting regularly called as required by law.    Code 1871, § 1353. That R. G. Sims had completed the roll and filed it with the clerk of the board; that all persons were notified to examine the roll and file their objections thereto on or before the second Monday, being the 8th day of September, at which time said board would meet to receive and examine said roll and to hear and determine objections thereto, etc.    Public Revenue Acts, 1878, § 29.

That on September 8 the board met, the same being a special meeting regularly called, by posting, etc., and the minutes of September 23 show that the board remained in continuous session from the 8th to 23d, inclusive, hearing objections to and correcting said roll, and that on that day they completed and approved said roll and instructed the clerk to proceed with it according to law.

The proceedings in regard to the assessment roll were in strict conformity to law.

In regard to appellant offering to introduce a deed to the Greenville, Columbus and Birmingham Railroad Company to a right of way (an easement) over Lot 11, and a deed to one Patterson to a part of Lot 11, I would say these deeds are more irrelevant to the matter in issue than anything that can be imagined, unless it be the facts which he offered to introduce evidence of, that at the time of the sale Lots 9, 10, and 11 belonged to different owners and were of widely different value.

CAMPBELL, C. J., delivered the opinion of the court.

The several grounds of objection made to the introduction in evidence of the list of lands sold to the State in Washington County for non-payment of the taxes of 1881 were untenable and properly overruled. The certificate of the tax collector should have been dated, and the certificate of the auditor should have shown when it was received in his office, but the omission of these dates was not material and did not vitiate the sale. It does not appear when the list was sent to or received by the auditor, but in the absence of anything to show the contrary it will be presumed that the officers performed their duty as to the time, even if time as to this is material.

The objection that three lots (9, 10, and 11) were sold together for one single tax and costs is without force, in view of the fact that they may have been, and presumably were, assessed together for a single sum as one tract. The sale for more than could be lawfully claimed for taxes or costs, if there was in fact such excess, did not invalidate the sale.

The only ground of objection to the deed from the auditor to the plaintiff upon which we specially remark is, " Because it fails to state upon it the amount of State taxes and damages thereon, and the amount of county taxes and damages thereon, and the amount of other taxes and damages thereon, etc., as prescribed by § 562 of the Code of 1880." The auditor's deed is indorsed by a statement of the fees, commissions, and costs of the different

officers entitled thereto and with the following : " State tax, general fund, one dollar and thirty-one cents ; State tax, school fund, eighty cents ; county tax, five dollars and seventy-five cents ; No. 2 levee tax, two dollars and thirty-one cents."

The specific objection made is that a separate statement of the damages due each fund was not made, and that this, which should be a distinct item, is embraced in others, and therefore the deed is invalid for non-compliance with the law.

We think the requirement of the statute on this subject was substantially complied with and its object fully met, and that the deed was properly admitted in evidence.

The evidence offered by the defendant to show the value of the different lots sold, and their ownership at different dates, and the exemption from taxation of the right of way of the G. C. & B. R. R. Co. over Lot 11, was all irrelevant.

The dealing of the Board of Supervisors of Washington County with the assessment roll of 1879 was not illegal, so far as appears from the record before us.

The orders from the minutes of the board, introduced by the defendant without the caption of the minutes of the meetings, are not sufficient to cause these meetings to be pronounced illegal. Meetings of boards of supervisors not affirmatively shown to have been not according to law are presumed to have been legal. *Brigins* v. *Chandler*, 60 Miss. 862.

The objection that from the 18th of August to the 8th of September was less time than the landowners were entitled to in the circumstances of the assessment being considered is not valid.    It was for the board of supervisors to prescribe the time.

As we understand the matter from the record, the board of supervisors met on the first Monday of August, 1879, to examine the assessment roll, and rejected it, and appointed the individual who was assessor to make and complete the roll, and designated the 18th of August for him to deliver it, and that on the 18th of August the board met and received the roll and ordered that all objections to it be filed by the 8th of September, and that on the 8th of September the board met to act on the assessment roll and proceeded to

do so. It does not appear that due notice was given of these special meetings, but, as before stated, they are presumed to have been held according to law. If the captions of the minutes of these meetings were before us it might appear that they were called and held as prescribed by law. It is to the caption, and not an order during a meeting, that we look for a statement of the organization of the body holding a session.

The appointment of the assessor as the person to complete the assessment was reprehensible, but it did not make the assessment completed by him illegal. He was *pro hac vice* an officer *de facto*, and his acts were valid. In *Wolfe* v. *Murphy*, 60 Miss. 1, we animadverted on the illegal and vicious practice of boards of supervisors to appoint assessors to complete assessments they should have made, and declared that it was the purpose of the law that the delinquent assessor should lose his compensation, and should not be enabled to save himself from loss by the easy device of an extension of time by the action of the board of supervisors in appointing him to make the assessment.

We find no error for which the judgment should be disturbed, and it is　　　　　　　　　　　　　　　　　　　*Affirmed.*