WILLIAM HOWELL *v.* SAMUEL H. SHANNON.

1. TAX TITLES. *Assessment. Sale. Separate ownership. Assessment and sale as a single tract.*

    Where a body of land containing several legal subdivisions, which are owned in severalty by more than one person, is assessed to unknown owner as a single tract and is sold in solido at a tax sale and purchased by one of such owners, the sale is void, since in such case there can be no apportionment of the taxes due upon the several parcels, and no one of the owners could acquire title by a purchase of any one of the forty-acre subdivisions in which the land should have been sold, for the reason that he was liable for a part of the taxes due on the whole tract and every subdivision thereof, and in buying would be merely paying his debt.

2. PUNITIVE DAMAGES. *Willful trespass.*

    The finding of a chancellor that a trespass was willful and assessing punitive damages will not be disturbed on appeal when there is evidence to support it.

FROM the chancery court of Jackson county.

HON. STONE DEAVOURS, Chancellor.

Shannon, appellee, was complainant, and Howell, appellant, was defendant in the court below; from a decree in complainant's favor the defendant appealed to the supreme court. The opinion states the case.

*Mayes & Harris,* for appellant.

The testimony makes perfectly clear what occurred, and it was this: Howell had undertaken to pay his taxes; but while he paid his taxes and got a receipt on part of his land, he did not pay on all of it. The land was advertised, and he detected the fact. He went to the sheriff's office to pay up the residue of his taxes, carrying his deed, which, as the court will see, was a complicated description by metes and bounds. He and the deputy

sheriff figured on it, and the upshot of it was that, instead of figuring out the truth that Howell had some land in the southwest quarter which was not paid on, the deputy sheriff charged him up with all of the land in the southeast quarter, and collected taxes on that. It seems he probably did not give Howell a tax receipt as he ought to have done, but he struck the southeast quarter out of the advertised lands in the newspaper, and that quarter was not sold as delinquent, which fact appears from the tax deed itself. Wherefore, it came about that the sheriff sold as delinquent land the north half and the southwest quarter which Howell bought at the sale. The foregoing are the facts as shown in this record. It is manifest that from these facts are evolved two questions: First, the effect on the tax sale as a sale; secondly, the effect on Howell's right to buy at that sale and acquire the interest of a purchaser.

The first question is one between the delinquent and the state; the second one is one between the complainant and the defendant; the two are quite different questions, distinctly separable, although the complainant in his statement of his case confuses them.

Of course, Howell's payment of this tax money to the sheriff under the circumstances described in this record avails nothing, so far as the validity of the sale was concerned. He produced no tax receipt, which is the only competent evidence of payment. It brought about the result, practically, that the southeast quarter was left out of the sale, and in so far as this complainant had lands lying in the southeast quarter he got the benefit of Howell's payment.

On this point of the validity of the sale itself the question is this in brief: Given a tract of land which is assessed as "unknown" in conformity with § 3774 of the code; and given the further fact that the tract really belongs to two different owners, each holding in severalty, does that fact render void a sale made by the sheriff in the ordinary manner by forties and other legal subdivisions, because in one of the forties is em-

braced lands belonging to each of the two unknown owners? or because in the whole tract is embraced lands belonging to each of them?

We submit that the negative answer to this question is clear. Where lands are assessed to unknown owners, it is impossible that the validity of the tax sale made by the state in the collection of its revenue shall be determined by the unknown element of a boundary line existing between two or more unknown owners, who may own lands within the ordinary subdivision. The law requires that the land owner shall take active interest in the assessment of his lands, and see that the lands are assessed at their true value, and property assessed to him. Code, § 3772; *Bailey* v. *McClaugherty,* 37 S. E. Rep., 701. If the owner discharged this duty, and the lands are assessed to him by his name, even although they may be less than a forty, or although they may be irregular in shape, he has a right that his lands so designated on the land tax rolls shall be sold as separate and distinct property; but where he neglects this duty, and allows the lands to be assessed as "unknown" under the law, then he has no right to except or to insist that the sheriff shall segregate his lands. So far from having a right to demand that the sheriff in making the sale should undertake to apportion the taxes in such cases, and sell lands, assessed as "unknown" piece meal, to avoid confusing his interests with those of other persons, if the sheriff on his demand were to undertake to do so, the very fact would be a violation of the law, and would render the sale void. In case of lands assessed as "unknown," the only method for the sheriff to adopt lawfully is to sell the lands by the surveyed subdivisions, as was done in the case at bar. *House* v. *Gumble,* 78 Miss., 259.

The court will remember that when the sheriff sold these lands, all of the lands sold, both the north half and the southwest quarter, were delinquent. It is true that Howell made an effort to pay the taxes on such lands as he did own in the

southwest quarter, and that the deputy sheriff by a blunder attributed the payment to the exoneration of the entire southeast quarter. But the abortive effort on the part of Howell does not alter the fact that, in law and in fact, the entire north half and the southwest quarter were delinquent when sold, and the sale was lawful and valid.

The second question involved in this branch of the case is this: Was Howell disqualified to purchase at the sale because of the fact that he himself owned a small part of the acreage lying in the southwest quarter?

We have shown above that the lands were delinquent and were lawfully sold. They were assessed as "unknown;" in fact, there were two owners in severalty, the purchaser being one, and the complainant being the other. There is no pretense in this record that there were any personal relations between Howell and the complainant which would debar Howell from the privilege of purchasing the complainant's land at tax sale. There is no pretense that Howell was under the least obligation or liability to pay taxes on complainant's lands, or that he had anything whatever to do with the delinquency of complainant's lands or with procuring the sale to be made. The bald proposition is that because as to one part of the lands sold by the sheriff, Howell was owner, and was, technically, a delinquent; he could not, therefore, buy at tax sale another portion of the tract, distinct in fact, and not in any way connected with his own tract.

It would seem clear that the effect of the sale was this: That so far as that portion of the land was concerned which was Howell's own, the purchase was a redemption merely; but in so far as that portion of the land was concerned which was McInnis's, it was a strict purchase, and title thereby inured to Howell.

As a matter of fact, as Howell testifies, he thought that he he had paid all his taxes. He had intended to do so, and he had parted with his money. As a fact, he had paid the

entire taxes on the southeast quarter, being more land than he owned, and his payments had inured, unknown to himself, to the benefit of complainant to that extent. He had not, in fact, paid the taxes on the strip of land owned by him in the southern portion of the southwest quarter, but he believed that he had done so. His belief, of course, would not avoid the sale, nor would it exonerate him from liability for the taxes due on the same; but it does exonerate him from the charge that he was a willful delinquent, and it leaves this question stripped of any embarrassment coming from that source. He thought when the sheriff put up the southwest quarter that the legal effect of the sale was to sell all of the southwest quarter except what lands belonged to himself, believing, as he did, that he had paid on a part of the southwest quarter. If his interest in these lands had been an undivided interest, or if he had been under any obligation of any sort to pay the taxes on McInnis's land, he could not have purchased them; but it was a separate interest, and he was under no such obligation.

We submit that there was no reason why he was disqualified to buy, and that the sale to him was good.

In *Bond* v. *Griffin,* 74 Miss., 599, this court held that where one who claims lands under a tax deed, in good faith, and believing he owned the land, cut trees therefrom, he is not liable to the statutory penalty, even although his tax title should in fact be void. See also *Liddell* v. *Railroad Co.,* 25 Mo., 550. These cases would seem to settle this question and this branch of the case in favor of appellant. The chancellor, however, as we gather from the nature of his decree, seems to have considered that Howell was a willful trespasser and to have held him for the statutory penalty on that ground.

After the sale for taxes in 1899, at which Howell bought, Shannon purchased these lands, which were then not occupied actually, from McInnis. He took possession of the same, so far as necessary for the purpose of his business, which was the running of a turpentine orchard. The record wholly fails to

disclose that the lands were actually occupied as a residence by any one, and they were not cultivated otherwise than as a turpentine orchard; and except as to the method of treatment, the complainant admits that they were wild lands.

So soon as Howell's title matured by the lapse of the period of redemption, he also went upon the lands for his purpose and cut some trees thereon. He asserted his title and insisted upon his rights. He gave a written notice to Shannon on the 8th of March, 1901.

If it be said that Shannon's use of the land by his turpentine orchard was possession, then also it must be admitted that Howell's use of the land by going upon the same and cutting trees was occupancy. It is true Shannon was there first, and that is the whole case; in fact, it was a mere case of "scrambling possession."

It was not an adverse possession by either party. It would not avail even to start the running of the statute of limitations. In either case, it amounted to nothing more than an overt assertion of ownership. *Harris* v. *Jones,* 122 Mo., 125; *Nye* v. *Alfter,* 127 Mo., 529; *Loftin* v. *Cobb.,* 46 N. C., 406; *Sequatchie Co.* v. *Coppenger,* 95 Tenn., 526; *Murphy* v. *Welder,* 58 Tex., 235; *Hamilton* v. *Icard,* 117 N. C., 476; *Wheeler* v. *Winn.* 53 Pa. St., 122; *Burks* v. *Mitchell,* 78 Ala., 61; *Miller* v. *Downing,* 54 N. Y., 631; *Wilson* v. *Blake,* 53 Vt., 305.

If it shall turn out that Howell's tax title was void he occupied the attitude of a trespasser and must submit to the consequences of that attitude; but he does not occupy the attitude of a willful trespasser and cannot be visited with the penalty attached to willfulness. See *Lusby* v. *Railroad Co.,* 73 Miss., 360.

*Green & Green,* for appellee.

1. Appellant could not obtain title at the tax sale and set it up against appellee. The assessment was an entirety, and if the tax collector had permitted appellant to pay on an aliquot

part, by metes and bounds, a proportionate part of the taxes on the whole 580 acres, which he did not, in fact, do, such payment would have been illegal, and legally no payment. *Speed* v. *McKnight,* 76 Miss., 723; *House* v. *Gumble,* 78 Miss., 268. The tax collector was bound to sell according to the assessment roll, and not according to his private judgment or memoranda. *Higdon* v. *Salter,* 76 Miss., 767. Therefore, the tax collector could not receive payment of a part and sell for the balance on a joint assessment to a single owner; hence, the land of appellant, being a part of the whole 580 acres, was sold for the taxes of itself and of the balance of 580 acres, and the land of appellee was sold for taxes of itself and of the land of appellee, and in such case neither owner could acquire a tax title against the other. *Smith* v. *Cassidy,* 75 Miss., 916; *McLaughlin* v. *Green,* 48 Miss., 209. The sale was void because not made in accordance with § 3813, code 1892. The mode adopted was not an "offer" of the land for sale in forty-acre tracts. Under the settled interpretation of this statute there must be an offer of sale of forty acres for the taxes on the whole 580 acres. *Nelson* v. *Abernathy,* 74 Miss., 168. The tax collector is directed "to sell the land, or so much and such parts of the land  .  .  .  as will pay the amount of taxes due by him," etc. Code 1892, § 3813.

2. Appellee was in the actual possession of the land north of the line, and was daily using it in his turpentine business. Howell, himself, admits Shannon's possession and operation, and that he was a trespasser. The settled doctrine of this state is that the penalty is recoverable for any cutting without consent, unless the defendant proves "that it occurred through accident, inadvertence, and mistake; provided reasonable care and caution be taken to avoid the mistake. The burden of showing unintentional mistake and the exercise of reasonable care to avoid it is upon the defendant." *Kiern* v. *Warfield,* 60 Miss., 807.

"The statutory penalty is recoverable only in cases of willful

trespass or inexcusable neglect to take proper precautions for avoiding the trespass." *McCleary* v. *Anthony,* 54 Miss., 711. If "the defendant fails to take the ordinary reasonable pains to ascertain the lines, and in this respect was so indifferent and negligent that he cannot fairly refer the cutting to accident or inadvertence . . . to withdraw the tortious act from the operation of the statute, it must appear to have been done by accident or inadvertence." *Mhoon* v. *Greenfield,* 52 Miss., 438. Whether the defendant exercised proper diligence and was actuated by good faith only is a question of fact for the chancellor, and his finding will not be disturbed. *Partee* v. *Bedford,* 51 Miss., 84; *Apple* v. *Ganong,* 47 Miss., 189; *Walker* v. *Walker,* 67 Miss., 533. Appellant cannot rely upon the proposition that he believed that he had a good title and that he was owner, and hence acted in good faith, and therefore would not be liable except for actual damages.

In the first place this is not the fact. Appellant knew the whole of the facts which rendered the tax title void, and without seeking advice as to his rights, he undertook to enforce possession by force. *Haley* v. *Taylor,* 77 Miss., 871; and *Lusby* v. *Railroad Co.,* 73 Miss., are not parallel with the case at bar.

Argued orally by *Edward Mayes,* for appellant, and by *M. Green,* for appellee.

Terral, J., delivered the opinion of the court:

The matters of controversy in this suit were determined in the chancery court of Jackson county. The bill of complaint was filed by S. H. Shannon against William Howell, in which Shannon claimed to be the owner of all of section 34, township 5 S., range 6 W., in Jackson county, lying north of a line commencing 24 chains and 38 links north of the southeast corner of said section, and running thence west 40 chains to Kirkwood lake, thence following the center of said lake in a southerly course until it crosses the west line of said section 34, and seeking to cancel, as a cloud upon his title thereto, a tax title

held by William Howell. The bill further alleged that Shannon, in March, 1901, sometime before and since said time, was operating a turpentine orchard upon said land as a means of livelihood and source of profit, having as many as 7,000 boxes thereon, and that Howell, in willful disregard of the right and possession of said Shannon, entered upon said land and cut and removed therefrom 57 trees, for which he demanded the statutory penalty of $15 per tree. Said bill of complaint further alleged that said William Howell had willfully, without cause or excuse, caused some of his turpentine boxes to be filled with dirt, others to be set on fire and burned, drove nails in the trees where the next streak should have been made, and thereby caused the hacks used by his workmen in chipping said trees to be broken, and had willfully interfered with his hands in the operation of said turpentine orchard, and had intimidated them from working therein by threats of prosecuting them for trespass; and by these means had greatly damaged his business, as he alleged, in the additional sum of $700; for all which sums he demanded a personal recovery. The defendant, William Howell, made his answer a cross-bill, and, claiming title to the land in controversy to be in him, he alleged that Shannon had willfully trespassed upon it, had cut turpentine boxes into a great many of his trees, to his great injury and damage, for which he demanded punitive damages in the sum of $1,250. The chancellor canceled Howell's tax title, and gave a decree for complainant for $855 punitory damages for cutting and removing the 57 trees, and $250 punitive damages for the other trespasses above recited, less the taxes paid by Howell on Shannon's part of said land, aggregating $1,095.94; and from that decree Howell appeals.

But two questions arise upon the record: (1) The validity of the tax title of William Howell; (2) the imposition upon Howell of punitory damages. According to the record the assessment of section 34, township 5 S., range 6 W., at the time of the sale, stood as follows: "A. A. Vaughn, 20 a. in S. E.

quarter of Allen Goodwin claim, 34, 5, 6; William Howell. 34 a. in S. E. quarter of Allen Goodwin claim, 34, 5, 6; unknown all except Allen Goodwin claim 580 a. 34, 5, 6." In fact, in 1896, when the assessment of this land was made, Daniel McInnis, of whom Shannon subsequently purchased, owned all of said section 34 lying north of the line described in the beginning of this opinion, being about 480 acres, and William Howell owned all of the S. W. quarter of said section 34 south of said line, and 34 acres in the S. E. quarter of said section 34 immediately south of and next to said divisional line above described, being about 100 acres. Howell and McInnis each made attempt to pay the taxes upon his respective portion of said land, with the result, however, that McInnis failed to pay the taxes on any portion of his land in said section, and Howell paid only on his land in the southeast quarter of said section. In March, 1899, the land in controversy, assessed as above stated, was sold to said William Howell for $10. We have, therefore, a case where a tract of land, 580 acres in quantity, containing several legal subdivisions, owned in severalty by two persons, but assessed to unknown owner as a single and entire tract, is sold in *solido* at a tax sale and purchased by one of said owners, who claims the fee in the entire tract by reason of said purchase. We think the tax sale void. It is the duty of every owner of land to list it by description and value to the assessor for assessment, and if either of the owners in this instance had listed this parcel of land as being owned by him, and had suffered it to be sold at tax sale, and had bought it in, he would not have acquired a title by such purchase. *Ragsdale* v. *Railroad Co.,* 67 Miss., 106 (s. c., 6 So., 630). And where the owner fails to render his assessment, the assessor performs that office for him, and the assessment by the assessor stands upon the same footing as that made by the owner; and where the land is assessed as an entirety at one lump sum, the tax cannot be apportioned to the several parcels; nor can an owner of a part of the land so

assessed take a benefit or advantage under a purchase 'at tax sale that he could not take if it had been listed by himself for taxation. It was plainly the duty of the tax collector to offer for sale 40 acres of said section 34, and to have added a similar subdivision, etc., until the necessary tax was produced; and whether the first, second, third parcel, or the whole tract, be sold, the owner of a part of said land cannot make a valid purchase of it, because a part of the tax of the whole tract, and of each and every parcel of it, is legally due from him, and in making the attempted purchase he is but paying his own debt. It is by his neglect of duty that his land is assessed with the land of another person as an entirety, and he cannot gain an advantage at a sale thereof under such circumstances. The relation of Howell to the assessment did not permit him to acquire a title to McInnis' part of the land, but at most gave him a right to subject the land of McInnis to the payment of its proportionate part of the taxes assessed to the whole tract. *House* v. *Gumble,* 78 Miss., 259; s.c., 29 So., 71; *Cone* v. *Wood,* 108 Ia., 260, s.c., 79 N. W., 86; s.c., 75 Am. St. R., 223; Black, Tax Titles, sec. 261.

2. The question of good faith of Howell, or of willful wrong by him in trespassing upon the lands of Shannon was fairly submitted to the chancellor, and his finding is supported by evidence of such determined purpose on the part of Howell to enforce his claim, whether good or bad, and at any hazard, that no other finding could have been expected or justified.

*Affirmed.*