Syllabus.

# CHRISTOPHER R. NORTH v. SILAS C. CULPEPPER.

## [53 South. 419.]

1. TAXATION. *Assessment. Values. Tax sales.*

A valid assessment is essential to a valid tax sale, but an assessment is not void because it includes lands of materially different values to which an uniform acreage value is given.

2. SAME. *Same. Code 1906, § 4296. Objections heard. Irregularities corrected. Approval of assessment.*

An objection to an assessment on the ground that lands not contiguous and not owned by the same person were assessed as one track at a specified sum per acre should be made before its approval, under Code 1906, § 4296, giving tax payers opportunity to object to assessments and providing for their correction and approval, and, if not so made, it will not defeat a tax sale based on the assessment.

3. SAME. *Tax sale. Validity.*

Where eighty acres owned by one person and forty acres owned by another were jointly assessed as one tract at a uniform value per acre, and the owner of the eighty acres paid two-thirds of the taxes assessed against the tract, a sale of the forty acres for the nonpayment of the remaining third was valid, as against the objection that the tax collector arbitrarily divided the sum apportioned as a tax against the aggregate value of the whole, and sold a separate parcel for a part of the tax, since the tax collector sold the only tract on which there was any tax due and unpaid at the assessed valuation placed on it by the assessor.

4. SAME. *Same. Same. Code 1906, § 4332.*

Code 1906, § 4332, providing that a tax sale shall not be invalidated, except on proof that the land was not liable to sale for taxes or that the taxes had been paid before sale or that the sale was made at a wrong time or place, contemplates that all the prerequisites leading up to a sale have been conducted in a way to render them valid; and a tax sale of forty acres jointly assessed with eighty acres at a uniform value per acre cannot be attacked, where it is sold for one-third of the taxes after the owner of the eighty acres had paid the two-thirds, and where the sale was at the proper time and place, and one-third of the taxes were due and unpaid.

FROM the chancery court of Harrison county.

HON. THADDEUS A. WOOD, Chancellor.

Culpepper, appellee, was complainant in the court below; North, appellant, was defendant there. From a decree overruling his demurrer to the bill of complaint, the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Ford, White & Ford,* for appellant.

In *Speed v. McKnight,* 76 Miss. 723, the court held that where several lots of land separated from each other and of variant values are assessed together at an aggregate valuation, and the taxes on some of them are paid, the tax collector is not authorized to change the assessment so as to exclude therefrom the lots paid on, deducting from the aggregate valuation a part proportionate to the whole, as the number of lots paid on are to the entire number; and that such a sale was void. In *House v. Gumble,* 78 Miss. 259, the court held that where there was a joint assessment of the west half of lot 8 and the west half of lot 9 in the town of Arcola at one valuation for the whole of said west half of said lots, but a separate sale of the west half of lot 8 and the west half of lot 9 by the tax collector, that the sale was void. In *Howell v. Shannon,* 80 Miss. 598, the court held that where a body of land containing several equal subdivisions which were owned in severalty by more than one person, is assessed to an unknown owner as a single tract, and is sold *in solido* at a tax sale and purchased by one of such owners, the sale is void, since in such case there can be no apportionment of the taxes due upon the several parcels and no one of the owners could acquire title by a purchase of any one of the forty acre subdivisions in which the land should have been sold, for the reason that he was liable for a part of the taxes due on the whole tract and every subdivision thereof and in buying would be merely paying his debts.

It will clearly be seen that this case is distinguished from the cases above mentioned for the following reasons:—

*Speed v. McKnight* and *House v. Gumble* were cases where town lots were assessed jointly, and the separation of said lots by the sheriff in making his tax sale amounted to an arbitrary separate assessment of these lots by the sheriff; and the contention of appellee in this case was that the sheriff, by permitting two forties of this land assessed together to be paid on, had made an arbitrary separate assessment. We are willing to waive the question as to the right of the owner to pay a proportionate part of the taxes and release his part of the land. If he had that right, then everything that was done was regular. If he did not have that right, then this land was still liable for the remainder of the taxes.

There was no separation of this land on the assessment roll by the sheriff, and our contention is, that, admitting the sheriff had no right to make a separate assessment and permit any two forties to be paid on, his action in receiving the money amounted to nothing more than accepting a partial payment of two-thirds of the whole of the taxes, leaving still due one-third of the taxes against the entire three forty acre tracts which were assessed together.

As the matter stood on the day of the tax sale two-thirds of the taxes on these three forties of land had been paid and one-third of the taxes remained unpaid. It was the duty of the sheriff then under section 4328 to sell the land for the taxes remaining unpaid. It was his duty under said section to first offer one forty and if the first parcel so offered did not produce the amount due, to then offer another similar subdivision and so on until the whole tract was offered.

Following strictly the directions of the statute he offered for sale forty acres which happened to be the S. W. ¼ of N. W. ¼ of the section. Up to this time the proceeding was unquestionably regular. When no bidder appeared he struck off this land

to the state for the remainder of the taxes then due on the whole of said three forties of land.

If an individual had bid at that sale the remainder of the taxes due it would unquestionably have been the duty of the sheriff to have struck off this forty acres of land to him, and there can be no question but that his title would have been perfectly good; for the reason that there still remained due the amount of taxes for which it was sold; and the fact that the other forties were also still liable would not have invalidated the sale, because the statute required the sheriff in this case to separate the land by offering it into subdivisions of forty acres.

For these reasons we say that the case of *Speed v. McKnight* and *House v. Gumble* do not apply. In those cases there was no statute authorizing the sheriff to divide the property jointly assessed, in making a sale. In this case the statute not only authorized it but required it. The case of *Howell v. Shannon* does not apply because of the fact that the court held in that case that Howell's title was not good for the reason that Howell himself owed part of the taxes and in purchasing at the tax sale was simply paying his debt.

This case in a nut shell is that three forty acre tracts were assessed together; an individual paid two-thirds of the taxes under the belief that he was paying the taxes on two forty-acre tracts; one-third of the taxes remained unpaid and the sheriff following the statute first offered one forty for the taxes due on the whole and when there were no bidders struck it off to the state. In other words, the state bid for this one forty the amount of taxes due on the whole.

The only irregularity we can find in this tax sale is that the sheriff did not add another forty-acre tract when he received no bid for this forty; but we submit that this was a mere irregularity which affected no right of appellee, and from which no harm could come to him and of which he could not complain.

*V. A. Griffith,* for appellee.

In *House v. Gumble,* 78 Miss. 259, this court says: "It is well settled that where distinct parcels of real estate are properly grouped as an entirety for valuation, and one tax is laid against the total value, the tax sale, if made, must correspond to the previous grouping and valuation of the property. No tax collector possesses the legal authority to arbitrarily divide the sum apportioned as a tax against such aggregate valuation and sell a separate parcel for the whole tax or any part of the tax. There being no tax against either lot as a separate parcel, there could lawfully by no separate tax sale of either lot," citing in support all the standard text writers.

Now in this case the averments of the bill are distinct that three forties of land (of which the one involved was a part) were assessed together to "unknown" in one lump assessment conjointly at a lump conjoint valuation of $240. That the forty attempted to be sold was not on any assessment roll separately assessed at any sum whatever, but that the sheriff had attempted to turn himself into an assessor as well as a tax collector, and had permitted some party to come in and pay the supposed taxes due on the other two forties, apportioning the same at $160, and thereby apportioned the assessment at $80 against said remaining forty, and afterwards attempted to separately sell same for said supposed taxes thereon at eighty dollars when no such assessment had ever been laid against it at all. In other words, the tax collector assumed the "authority to arbitrarily divide the sum apportioned as a tax against the aggregate valuation, and to sell a separate parcel for a part of the tax," which is just what the supreme court, using its own language, has held he cannot validly do. In *House v. Gumble, supra,* this court put the same proposition in this language: "It is not competent for the tax collector to apportion the tax to separate parts of the tract, and to sell the several parts of the

tract separately, and if he does so, his action is illegal and the
sale is void." This is the law and a careful consideration and
analysis of it, and the reasons for it will reveal that it ought to
be the law. Here are three forties of land—one forty (the one
sold) being one half mile separated in distance from the other
two. The three are assessed as an entirety at one sum, to wit:
$240. The sheriff has no business to say that two forties are
worth $160 of this and the other eighty dollars. For all we
know, and for all he could legally know, the two forties were
farm lands with improvements and dwelling houses on them,
and the third a wasted marsh, practically worthless. The two
forties may have been worth $220 of the assessment and the
other only twenty dollars. Yet he goes out of and beyond his
legal authority and arbitrarily says—and all he could say on it
would be arbitrary—that the two forties are worth $160 and
the other eighty dollars. He says to the party who wants to
pay on the two forties "I will do this for you, and although
your two forties are worth $220 and the remaining one only
twenty dollars, I will just collect from you on $160 and sell
the worthless forty for eighty dollars, and here are your receipts
for the two forties." He did not pretend to be taking part of
the taxes on the whole assessment of three forties, but was
taking, according to his assessment, the whole taxes on two of
the forties, in other words, he was cutting himself off from over-
looking to the two forties for any of the taxes. He was separ-
ating, cutting aloose, and dividing into parts, things which the
only authority competent to act in the matter had put together
and made one whole. And in doing so, he could not legally
know that he was saddling the other forty with an unjust burden
of taxation, for it may not have been worth the half of what he
was laying against it as his arbitrary assessment, and the other
two forties thereby allowed to escape their just proportionate
burden according to the real and actual value, as each of them
may have been worth double or three times the remaining forty."

The same principle above quoted is again found in the case of *Howell v. Shannon,* 80 Miss. 598, this court there using it somewhat as an axiomatic proposition working into the decision in that case. The court says: "Where land is assessed as an entirety at one lump sum, the tax cannot be apportioned to the several parcels."

Argued orally by *V. A. Griffith,* for appellee.

MAYES, C. J., delivered the opinion of the court.

In July, 1909, S. C. Culpepper began a suit in the chancery court of Harrison county against C. R. North. The suit had for its object the cancellation of a tax title held by North to the S. W. ¼ of N. W. ¼, section 4, township 2 S., range 12 W. The complainant fully deraigned his title down to the point where the adverse claim commences, and there is no point made on that. The bill shows that the land in question was assessed in the year 1900 as required by law. The assessment of the land was as follows, viz.: "Unknown, E. ½ of S. E. ¼, and S. W. ¼ of N. W. ¼, Sec. 4, T. 2, R. 12 West, $240." It is seen from the above assessment that the forty acres in question was jointly assessed with another eighty in the same section, etc., and that the whole was assessed at a uniform value of $2 per acre. It seems from the bill that the E. ½ of the S. E. ¼ belonged to one person, and that the S. W. ¼ of N. W. ¼, containing the forty acres in question, belonged to another. However this may be, the proportionate tax on the eighty-acre tract was paid; that is to say, the party paying on the eighty-acre tract paid two-thirds of the tax assessed on the uniform value of $2 per acre for the whole, leaving the remaining third, assessed upon the forty acres in question, unpaid. Subsequently, and on March 4, 1901, the remaining forty acres of land was sold for one-third the tax still unpaid. The property was bought in by

the state, and on the 17th day of May, 1906, North purchased same from the state and obtained a deed therefor. The bill was demurred to, and overruled by the court, from which jugment North prosecutes this appeal.

Since a valid assessment of all property is the foundation of the validity of all sales, it is well to settle this question at the outset. This land is not contiguous, and it was an irregularity for it to be assessed as one tract of land. The duty of proper assessment is a double duty, resting both upon the property owner and the assessor, and every opportunity is offered the property owner to see that a proper assessment is made, either by giving it in himself, or by making proper corrections after the return of the assessment rolls, as provided by section 4296, Code 1906 (section 3787, Code 1892). This section provides that: "After the return of the assessment rolls they shall remain on file and be subject to objections for at least two weeks after being filed, and until the next regular meeting of the board of supervisors after the expiration of the two weeks," etc. * * * "A person who is dissatisfied with the assessment may, within such time, present his objections thereto in writing," etc. * * * "All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity after its approval by the board of supervisors, or by operation of law, except minors and persons non compos mentis." Under this section we held, in the case of *Adams v. City of Clarksdale,* 95 Miss 88, 48 South. 242, that, "where an assessment roll has been properly approved, the taxpayer is precluded from questioning its validity afterwards, and the effect of the approval is to render a final judgment against the taxpayer, unless subject to be reopened under section 4312."

But it is claimed by appellee that the act of the tax collector in allowing the owner of the eighty-acre tract of land to pay two-thirds of the tax on his land, and then selling the forty acres

97 Miss.—47

of land for the remaining one-third, on which the tax at the uniform valuation placed on the whole tract was due and unpaid, was in effect an assessment made by the tax collector and rendered the sale a nullity. The contention is that the whole tax was due on each and every parcel of the whole tract jointly assessed; that the land was not separately assessed, and could not, therefore, be separately sold for its own specific tax. It is contended, for appellee, that the tax collector arbitrarily divided the sum apportioned as a tax against the aggregate value of the whole, and sold a separate parcel for a part of the tax, and the case of *House v. Gumble,* 78 Miss. 259, 29 South. 71 is cited as conclusive of this contention. Later in the opinion we will discuss the case of *House v. Gumble.* We desire to first state that in our judgment the facts of this case furnish no warrant for appellee's contention on this point. There was no arbitrary division of the land and sale by the tax collector for any part of the tax due on the whole. The tax collector sold the only tract on which there was any tax due and unpaid, and he sold it at the assessed valuation placed on it by the assessor. The assessor established the unit of value at two dollars per acre on the whole, and in accordance with this standard, fixed by the assessor, the tax collector sold the only part of the tract delinquent for tax. If it be true, as contended by appellee, that these tracts may be of variant values, the assessor has not assessed them in that way, and the fact that they were of different values could not affect the validity of a sale made under an assessment fixing them at the same value. It is the duty of the assessor to fix values, and if different adjacent tracts, or joint assessment of land, include lands of different values, the assessor should specify it; but, if he does not, this does not avoid the assessment. We have not found any case that holds that where two or more owners of land, inadvertently or otherwise, have their land jointly assessed, one of the owners may not pay the

tax on his land in proportion to the assessment, and have it liberated from the delinquent list, leaving the other tracts.to be sold for that proportion of the tax which is due and unpaid upon it. The very authority of the tax collector to sell depends upon the fact that a tax is due and unpaid, and he can only sell such land as has failed to pay its tax. There is no reason for holding contrary to this. The delinquent taxpayer is neither helped nor hindered by allowing the owner of a joint assessment to pay the tax on his own property, leaving the unpaid tract to be sold for its tax; but the public at large are much benefited by this holding, by leaving each person the power to protect his own without being complicated with some other indifferent and negligent owner, and perhaps being compelled to sue such other owner to recover back the tax which has been paid on such other's land. In the case of *Moores v. Thomas,* 95 Miss. 644, 48 South. 1025, we expressly held that one owner, under a joint assessment, might pay on his own land without being compelled to pay on the whole tract.

The case of *House v. Gumble,* 78 Miss. 259, 29 South. 71, *supra,* is a very different case from the one under consideration, and offers no obstacle to this view. In the case of *House v. Gumble,* the lots of J. R. Holcombe were jointly assessed as the "W. ½ of Lot 8, and W. ½ of Lot 9, Block 4," at an aggregate valuation, or lump sum. It does not appear that any person had paid the proportionate tax on either of the lots at the date of sale; but it does appear that the whole of the tax on both lots, jointly assessed, was delinquent at the time of sale. Instead of offering one of the lots for sale, as is required by section 4329, Code 1906 (section 3814, Code 1892), and making an effort to have the one lot bring a sufficient amount to discharge the tax on both, thus saving to the owner a part of his property, the tax collector, in direct violation of section 3814, Code 1892 (section 4329, Code 1906), arbitrarily apportioned the tax on both

lots and made a separate sale of each. This action of the as-
sessor necessarily resulted in a sale of both lots, the very thing
the law seeks to avoid. But a very different case would have
been made, had it appeared that these lots were owned by dif-
ferent persons, and one owner had paid his pro rata of the en-
tire tax, and the remaining lot was alone delinquent, and sold
for its own tax, and the only unpaid tax; and it would have been
the same, of course, if the lots were owned by the same person,
and one-half of the tax had been paid on one lot, and that lot
released. We have no concern in this decision as to what
equities might arise as between owners of different tracts of
land, jointly assessed, when it might happen that the land of
one owner was sold in complete discharge of the tax on the
whole tract. The question in this case is simply as to the valid-
ity of this tax title.

There was no error committed by the tax collector in con-
ducting the sale; but, if there had been, section 3813, Code 1892
(section 4328, Code 1906), prevents the error from invalidating
the sale, if the property was sold at the proper time and place
and the taxes were due and unpaid. That all of these things
existed is not even disputed. When there has been a valid
assessment and sale thereunder for taxes, section 3817, Code
1892 (section 4332, Code 1906), declares for what reasons it
may be avoided. The above section provides that, when a con-
veyance has been made by a tax collector, "no such conveyance
shall be invalidated in any court except by proof that the land
was not liable to sale for the taxes, or that the taxes for which
the land was sold had been paid before sale, or that the sale had
been made at the wrong time or place; and, if any part of the
taxes for which the land was sold was illegal or not chargeable
on it, but part was chargeable, that shall not affect the sale nor
invalidate the conveyance, unless it appear that before sale the
amount legally chargeable on the land was paid or tendered to

the tax collector." It is needless for us to say that this statute contemplates, of course, that all the prerequisites leading up to the sale have been conducted in a way to render them valid under the law.

Counsel for appellee cite the cases of *Speed v. McKnight,* 76 Miss. 723, 25 South. 872, and *Howell v. Shannon,* 80 Miss. 598, 31 South. 965, 92 Am. St. Rep. 609; but neither of these cases has any bearing on this case. We will undertake to point out the reason. In order to understand the case of *Speed v. Mc-Knight, supra,* it is necessary to consider the case in the light of the case of *Corburn v. Crittenden,* 62 Miss. 125, to which it refers, and from which it is distinguished. In *Corburn v. Crittenden* lots 9, 10, and 11, in the town of Greenville, and owned by different persons, were jointly assessed at one valuation and sold for delinquent tax on all, and the court held that "the objection that three lots (9, 10, and 11) were sold together for one single tax and costs is without force, in view of the fact that they may have been, and presumably were, assessed together for a single sum as one tract." In the case of *Speed v. McKnight,* 76 Miss. 723, 25 South. 872, *supra,* it was shown that lots Nos. 125 to 162, inclusive, were jointly assessed at the aggregate value of $800. These lots became delinquent for the taxes. Before the sale persons claiming 8 of the lots paid the taxes on them, and they were released by the tax collector, who, as the facts of the case show, "changed the assessment," and then sold all the lots save those paid on. Under these circumstances the court held that "the assessment under which this property was sold, and the sale, was utterly void. The case of *Corburn v. Crittenden,* 62 Miss. 125, is wholly unlike this case in its facts. The assessment here was the act of the tax collector and the lots were physically widely separated and of different values, as shown by proof, and should not have been sold as one tract."

In the case of *Corburn v. Crittenden,* 62 Miss. 125, the question was whether lots of different owners could be jointly assessed at an aggregate value and sold for taxes as one tract, and the court held that they could. There was no suggestion in the above case that the tax collector had changed the assessment in any way. In the case of *Speed v. McKnight* the assessment was declared void because made by the tax collector. These two cases turned on different questions. The case of *Speed v. Mc-Knight* did not hold that a number of lots could not be included in one assessment at an aggregate value, nor did it hold that the owner of one or more of the lots might not have paid on the particular lot owned by him and have it released from the sale without vitiating the sale of the others, if the lots were assessed jointly and at an aggregate and uniform value. If the case did not hold as stated, it was to that extent wrong, and is to that extent overruled. The case of *Howell v. Shannon,* 80 Miss. 598, 31 South. 965, 92 Am. St. Rep. 609, simply held, in substance, that when a body of land containing several legal subdivision, owned in severalty by more than one person, is assessed to "Unknown" as one entire tract, and sold for delinquent tax as a whole, and purchased by one of the owners, such purchaser cannot assert the title thus acquired by him against the owners of the other parts of the land. The land was assessed as an entirety. It was sold as an entirety, and, when one of the owners purchased the property at tax sale, his purchase operated for the benefit of all, since such purchase was but paying that which was a legal charge on all.

But none of these cases hold that any one of the owners could not have paid on any particular tract of the land and had same released. Such action would have been valid, and the tax collector would in no sense be said to have changed the assessment; that is to say, to have imposed more or less tax on any person's land. In such case the tax collector is merely receiving taxes

on the value of the land as fixed by the assessor. He does not change the assessment. He releases lands on which there is no tax due, and sells the land on which the tax is due. He only does what an injunction would compel him to do, and but pursues the only authority he has to act.

It is our view that the demurrer should have been sustained, and the bill dismissed. So ordered.

*Reversed.*