ILLINOIS CENT. R. CO. *v.* MILLER, STATE REVENUE AGENT.

[106 So. 636. No. 25160.]

(In Banc. Jan. 4, 1926.)

1. TAXATION. *Legislature held authorized by Constitution to provide for special mode of assessment and valuation of railroads.*

Section 112 of the Constitution of 1890, providing for equality and uniformity of taxation, authorizes the legislature to provide for a special mode of assessment and valuation of railroads, and by section 7021 *et seq.*, Hemingway's Code, chapter 247, Laws 1914, chapter 138, Laws 1918, and sections 7769l and 7769m, Hemingway's Code Supp. 1921, is provided a special scheme for the taxation of railroads.

2. TAXATION. *Assessment by state board of railroad assessors held binding on both state and railroad.*

Where a railroad makes the return provided by the above statutes, bringing all of its property to the attention of the state assessors of railroad property, and such assessment is made on such return

by the state board of railroad assessors, the assessment is *res adjudicata* and binding on both the state and the railroad.

3. TAXATION. *Certiorari lies from state board of railroad assessors to circuit court to review assessments by it and to test legality thereof.*

Sections 72 and 73, Hemingway's Code (sections 90 and 91, Code 1906), provide the method of reviewing assessments made by the state board of railroad assessors; and *certiorari* lies to the circuit court to review such assessments and test the legality thereof.

4. TAXATION. *Railroads are assessed as a unit; specific property not shown on assessment roll, if shown in railroad's return, not subject to separate assessment or back assessments.*

Railroads are assessed as a unit, and specific property, not shown on the assessment roll, if shown in the railroad's return under the above statutes, are not subject to separate assessment or back assessments.

*Corpus Juris-Cyc. References; Taxation, 37 Cyc., pp. 724, n. 33; 742, n. 52; 1020, n. 10; 1036, n. 4; 1108, n. 62; 1120, n. 23.

APPEAL from circuit court of Hinds county, first district.

HON. C. W. THIGPEN, Special Judge.

Application by W. J. Miller, state revenue agent, before the state tax commission, to back-assess property of the Illinois Central Railroad Company. From a judgment of the circuit court on *certiorari* the railroad company appeals, and the revenue agent brings a cross-appeal. Reversed, and judgment entered for railroad company. Affirmed on cross-appeal.

See, also, 106 So. 635, and preceding case in this volume.

The state revenue agent, on the 15th day of March, 1924, filed a request with the state tax commission to back-assess the Illinois Central Railroad Company. The property listed for back assessment reads as follows:

"Additional assessment of the I. C. R. R. Co. of its capital it has engaged in the railroad business in ———— county, state of Mississippi, for taxes due the munici-

palities and districts named below in said county, and due said county and the state of Mississippi, as below indicated, on its said capital it has engaged in said railroad business in the years below enumerated.''

The notice contained assessments for each of the counties in the state through whose territory the Illinois Central Railroad runs and is operated, and was for the years 1917, 1918, 1919, 1920, 1921, and 1922. The tax commission gave the notice required by statute, and the railroad company protested against such assessments in the numerous counties, contending that it had been assessed and had paid taxes upon all of the property operated by it in the state of Mississippi. It further contended that the notice was insufficient to give it information as to what specific property it was claimed had escaped taxation. On motion of the appellant, the years 1918, 1919, and 1920 were eliminated, as the road was operated during these years by the Director General.

There was an agreed statement of facts before the tax commission as follows:

''(1) Illinois Central Railroad Company is a railroad corporation, organized and existing under the laws of the state of Illinois. It was incorporated by an Act of the Illinois legislature, approved February 10, 1851. The Illinois Central Railroad Company has never been incorporated under the laws of the state of Mississippi, nor otherwise become a domestic corporation of the state of Mississippi.

''(2) In 1882 Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railroad Company, a Mississippi corporation, entered into a contract of lease, a copy of which lease may be introduced into evidence in this proceeding without further proof or identification, except the indorsement of the secretary of state tax commission showing that it has been filed. This lease was entered into pursuant to an Act of the legislature of the state of Mississippi, approved March 1, 1882 (Laws 1882, c. 559), authorizing Illinois Central

141 Miss.—15.

Railroad Company to lease the line of the Chicago, St. Louis & New Orleans Railroad Company. The terms of this lease have been faithfully carried out by the respective parties. The Chicago, St. Louis & New Orleans Railroad Company has not, since the execution of the said lease, operated any line of railroad in the state of Mississippi, or elsewhere, nor has the said Chicago, St. Louis & New Orleans Railroad Company ever owned any property in Mississippi, since the execution of the said lease, except that which is covered by the terms of the said lease. Illinois Central Railroad Company, since the execution of the said lease, has operated the railroad property owned by the Chicago, St. Louis & New Orleans Railroad Company, and has no connection as lessee or otherwise with any tangible property located in Mississippi, except such as is used in the operation of the railroad property of the said Chicago, St. Louis & New Orleans Railroad Company.

" (3) During the years 1918 and 1919, and for the months of January and February, 1920, the said railroad, and all the property pertaining thereto, including that part of the line located in the state of Mississippi, was under federal control pursuant to the proclamation of the President of the United States, and the terms of the Federal Control Act, the same being an Act of Congress approved March 21, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, sections 3115¾a–3115¾p). Pursuant to the terms of this act, a contract was entered into on the 9th day of June, 1919, between Illinois Central Railroad Company and the Director General of Railroads. A copy of this contract may be offered in evidence in this proceeding without further proof or identification other than the indorsement of the secretary of the state tax commmission, showing that it has been filed. During the period of federal control all of the said railroad was operated solely by the Director General of Railroads, and Illinois Central Railroad Company had

nothing whatever to do with such operation during the federal control period.

"(4) During the period covered by the back tax assessment involved in this proceeding; to-wit, the years 1917, 1918, 1919, 1920, 1921, and 1922, Illinois Central Railroad Company for all of this period, except the period of federal control, and the director general of railroads for the period of federal control, filed with the board of state railroad assessors, upon forms prescribed by such board, and in the manner required by such board, complete schedules relating to the said railroad operated by the Illinois Central Railroad Company and the director general of railroads, respectively, which schedules are of record in the office of the state tax commission and shall be considered as having formally offered and received in evidence in this proceeding. These schedules embrace all the property of the Chicago, St. Louis & New Orleans Railroad Company located in the state of Mississippi during the period of years mentioned, including the railroad leased to the Illinois Central Railroad Company, as aforesaid. Upon receiving the assessment rolls above referred to, the commission entered orders of assessment for each of said years. The orders of assessment so made by the tax commission, the assessment rolls pertaining thereto, and all orders, notations, and entries on such rolls and on the minute books and other records of said board are to be considered as having been offered and received as evidence in this proceeding. The assessment so made for each of the years 1917-1922, inclusive, were, in due course and as required by law, duly certified by the secretary of the board of state railroad assessors to the clerks of the boards of supervisors in each county where any of the said railroad property was situated, and such proceedings were thereafter had in each such county as led to the payment by Illinois Central Railroad Company for all the said period, except the period of federal control, and by the director general of railroads for the period of federal

control, of all taxes of whatsoever kind, character, and description as were due under such assessment. It is expressly agreed that for the period of federal control the director general paid, and, for the balance of the period, Illinois Central Railroad Company paid, in full to the proper county, municipality, road district, school district, drainage district, and other taxing districts all taxes of every kind which were assessed against said property.

"The amount of the said assessments and the amount of taxes paid thereon for each of the years involved are as follows:

| | | |
|---|---:|---:|
| 1917 | $17,714,142 | $446,720.38 |
| 1918 | 18,771,455 | 513,045.78 |
| 1919 | 17,822,445 | 570,445.42 |
| 1920 | 19,236,186 | 877,008.92 |
| 1921 | 19,467,045 | 837,368.00 |
| 1922 | 19,468,993 | 816,496.41 |

For these years Illinois Central Railroad Company paid in privilege taxes the sum of one hundred six thousand five hundred ninety-two dollars and sixty-three cents for the privilege of operating the line of railroad involved in this proceeding; this being in full of all sums assessed against it on this account.

"(5) There has never been within the state of Mississippi any separate assessment against any railroad designated *eo nomine* as capital employed in the railroad business, nor has there been any assessment against the Illinois Central Railroad Company of such an item of property for any one of the years 1917 to 1922, inclusive, nor has the Illinois Central paid taxes based upon any such separate assessment.

"(6) From time to time, subsequent to the execution of the said lease, Illinois Central Railroad Company loaned large sums of money to the Chicago, St. Louis & New Orleans Railroad Company, which sums were all expended in improvements, additions, and betterments to the railroad property so operated under lease. It is agreed that, prior to the year 1917, an amount equal to

five million five hundred thousand dollars, and prior to 1918, an amount equal to six million dollars was so advanced and expended in the state of Mississippi for such improvements as the double-tracking of the line from Jackson, Miss., to the Mississippi-Louisiana state line, the construction of new yards, station buildings, reballasting of track, and the like. No sums were so loaned to the Chicago, St. Louis & New Orleans Railroad Company, except as were spent for improvements and additions to the property. For all sums so furnished, the Chicago, St. Louis & New Orleans Railroad Company executed its bonds or other obligations from time to time and delivered same to Illinois Central Railroad Company covering said indebtedness, which bonds were by the said last-named company sold to the public and the proceeds credited against said advancements. It is agreed, for the purpose of this proceeding, that such sums may be taken and considered as if expended in each such county, municipality, or taxing district, traversed by the said railroad, in proportion to the mileage of the said railroad in each such county, municipality, or district. All the said advances were steps in the financing and improvement of said railroad, which as a whole was assessed from year to year as aforesaid.

"(7) It is expressly agreed that the execution of this stipulation shall not preclude either party hereto from introducing such further testimony as may be desired, provided such testimony shall not be inconsistent herewith."

Certain other evidence was also introduced. The tax commission referred the matter to the attorney-general of the state, for his opinion and advice as to the legality and propriety of the said assessment, and he advised the tax commission that the railroad was not subject to back assessment, because it had been properly assessed upon its property and holdings in the state of Mississippi. Thereupon the tax commission denied the request of the revenue agent, and dismissed the proceeding. There-

upon the revenue agent applied for and was granted a *supersedeas* under section 73 of Hemingway's Code, and the record was certified to the circuit clerk of Hinds county. The circuit judge being disqualified to try the said cause a special judge was appointed, and the case was submitted and argued before the special judge who was of the opinion that the railroad company was subject to assessment, and entered an order setting aside the order of the tax commission and holding it void and of no effect, but also held that the court was without power, either to make the assessment on the record, or to remand the cause back to the tax commission. The special circuit judge directed a copy of the order and his opinion to be certified to the tax commission, from which judgment of the circuit court the railroad company appeals to this court, and the revenue agent cross-appeals.

Reporter's note:—Brief of appellant missing from record.

*J. W. Cassidy,* for appellee.

I. *Should the Illinois Central Railroad Company be assessed on its capital employed in business in Mississippi in addition to and separate from the assessment and payment of taxes by the Chicago, St. Louis and New Orleans Railroad Company?* Section 112 of the constitution. The constitution in no uncertain language provides that "all property of every kind shall bear its burden of taxes," and the constitutional provision is self executed and sufficient without any act of the legislature to put it into force and effect. The legislature, by virtue of the authority vested in it by the constitution above set out, undertook by sections 7021 and 7023, Hemingway's Code, to provide a mode of assessment and collection of taxes against railroads and railroad property.

Counsel for the railroad company decline to take into consideration in discussing the legal phase of the questions here involved the fact that the property interests

in this railroad company have been divided into two parts; and by reason of such division, two properties and two taxpayers have been created, each subject to taxation, each taxpayer owning different property and each becoming liable to pay the taxes to be assessed against its property.

When the Chicago, St. Louis & New Orleans Railroad Company, by its lease contract, divested itself of the possession, use, control and enjoyment of its physical property for four hundred years; and when the Chicago, St. Louis and New Orleans Railroad Company ceased to operate its railroad tracks and business as aforesaid, by and with the authority of the state, it then became impossible for the assessors in fixing its taxes to take into consideration the property of the Illinois Central Railroad Company in fixing the value of the property of the Chicago, St. Louis & New Orleans Railroad Company. On the other side, it would be likewise improper to assess the Illinois Central with the value of lessor's franchise and with the value of the lessor's income derived from its lease and with the value of the lessor's investment in the construction of its railroad tracks.

If the interests of the Chicago, St. Louis and New Orleans Railroad Company leased by the Illinois Central, if business conducted by the Illinois Central over its leased lines of railroad can be correctly stated to be property, then there can be no question as to the duty of the board of assessors to assess its true value. Both of these companies are railroad companies and, therefore, due to be assessed by the railroad assessors for taxing purposes.

This section does not provide that such railroad company shall own, in fee simple, or otherwise, any particular kind or character of property. It requires only that they be *railroad companies* and that as such they shall own some kind or character of property used in the railroad business and the board of assessors are required to inquire into and find what is the kind and character

of property so owned and used and to fix the *"true value."*

On many occasions separate and distinct interests have been created in property and questions have arisen as to how and in what manner such properties may be assessed for taxes. An investigation of the authorities will disclose many cases on this subject. *Y. & M. V. R. R. Co.* v. *Evans,* 25 So. 366; *Commonwealth* v. *Kinniconick & S. F. R. R. Co.,* 104 S. W. 290, 31 Ky. 869; *City of New York* v. *Thirty Fourth Street Cross-Town R. W. Co.,* 122 N. Y. St. 344, 137 App. Div. 644; *Attorney-General* v. *Boston & A. R. Co.,* 244 N. E. 257; *Attorney-General* v. *Weir River R. R. Co.,* 124 N. E. 289; *People* v. *I. C. R. R. Co.,* 112 N. E. 100, 273 Ill. 220; *Commonwealth* v. *So. R. W. Co.,* 237 S. W. 11; *Indianapolis & St. Louis R. R. Co.* v. *Vance,* 23 L. Ed. 752. See, also, *Adams* v. *Kuydendall,* 83 Miss. 571, 35 So. 830; *Gerard* v. *Duncan,* 84 Miss. 731, 26 So. 1034; *Clayton* v. *Typelo,* 29 So. 994; *Caston* v. *Pine Lumber Co.,* 110 Miss. 165, 69 So. 668; *Jones* v. *Adams,* 104 Miss. 397, 61 So. 420. All these cases show that under the laws of the state of Mississippi there may be many divisions in the ownership of property and any number of estates, rights or interests therein, might be created by the parties; and in Mississippi where the law is that all property shall bear its equal portion of taxes, whenever the interest of any such person is such that it amounts to property, it will be subject to taxation. 26 R. C. L., section 318, states the general rule. See, also, *Graciosa Oil Co.* v. *Santa Barbara County,* 155 Cal. 140, 99 Pac. 483, 20 L. R. A. (N. S.) 211; *People* v. *Bell,* 237 Ill. 332, 86 N. E. 593, 15 Ann. Cas. 511, 19 L. R. A. (N. S.) 746; *Wolf County* v. *Beckett,* 127 Ky. 252, 105 S. W. 447, 17 L. R. S. 608; *Hancock County* v. *Imperial Naval Stores Co.,* 93 Miss. 822, 47 So. 177, 136 A. S. R. 561, 17 L. R. A. (N. S.) 693; *Harvey Coal Company* v. *Dillon,* 59 W. Va. 605, 68 L. R. A. (N. S.) 628.

The rule is that the value of the capital stock employed in a state may be determined by taking the value

of the entire capital stock and deducting therefrom the property not actively used in the business and apportioning to a state the same proportion of the value of such capital stock as the value of the property used in the state bears to the entire property used in such business. This rule has been sanctioned in the following cases decided by the supreme court of the United States. *Western Union Tel. Co.* v. *Attorney-General,* 125 U. S. 530, 8 Sup. Ct. Rep. 961, 31 U. S. (L. Ed.) 790; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 11 Sup. Ct. Rep. 876, 35 U. S. (L. Ed.) 613; *Attorney-General* v. *Western Union Tel. Co.,* 141 U. S. 40, 11 Sup. Ct. Rep. 889, 35 U. S. (L. Ed.) 628; *Maine* v. *Grand Trunk R. Co..* 142 U. S. 217, 12 Sup. Ct. 121, 35 U. S. (L. Ed.) 994; *Columbus Southern R. Co.* v. *Wright,* 151 U. S. 470, 14 Sup. Ct. Rep. 396, 38 U. S. (L. Ed.) 238; *Pittsburg, etc., R. Co.* v. *Backus,* 154 U. S. 421, 14 Sup. Ct. Rep. 1114, 38 U. S. (L. Ed.) 1041; *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1, 16 Sup. Ct. 585, 27 Sup. Ct. Rep. 326, 51 U. S. (L. Ed.) 636; *Cleveland, etc., R. Co.* v. *Backus,* 154 U. S. 439, 14 Sup. Ct. Rep. 1122, 38 U. S. (L. Ed.) 1041; *Chicago, etc., R. Co.* v. *Babcock,* 204 U. S. 585, 27 Sup. Ct. 326, 51 U. S. (L. Ed.) 630; *American Express Co.* v. *Indiana,* 165 U. S. 255, 17 Sup. Ct. 991, 41 U. S. (L. Ed.) 707; *Adams Express Co.* v. *Ohio State Auditor,* 105 U. S. 194, 17 Sup. Ct. Rep. 305, 41 U. S. (L. Ed.) 683, affirmed on rehearing in 166 U. S. 185, 17 Sup. Ct. 604, 41 U. S. (L. Ed.) 960; *Fargo* v. *Hart,* 193 U. S. 490, 24 Sup. Ct. Rep. 498, 49 U. S. (L. Ed.) 701. Also see 26 R. C. L., section 239, page 239, and authorities cited there.

II. *It is claimed by the appellant that its leasehold interest property and capital employed in business in Mississippi have been properly assessed and that the tax has been paid on same.* It is agreed that the Illinois Central has not paid any taxes on capital employed in business. It is argued by the appellants in their brief that in assessing the railroad, track, equipment, etc., of the Chicago, St. Louis & New Orleans Railroad Company, the railroad commission and the tax commission

necessarily took into consideration the capital employed
in business by the Illinois Central Railroad Company.
We answer this argument, first, by calling the court's
attention to the two paragraphs in the agreed statement
of facts above quoted; and, second, by the fact that the
board of railroad assessors did not have authority nor
did it have the right to take into consideration the prop-
erty of the Illinois Central in fixing the assessment of
the Chicago, St. Louis & New Orleans Railroad; and
if it did so, the assessment would be illegal, unjust and
void and could not acquit the real taxpayer from being
legally assessed for its own taxes.  It is said by the
appellant in its argument that the property of the Chi-
cago, St. Louis & New Orleans Railroad Company was
assessed in the year 1917 for about seventeen million
five hundred thousand dollars; for each year thereafter
for a slight advance, until the year 1922, at which time
it was assessed at approximately nineteen million five
hundred thousand dollars.

It is shown in the record in this case that this railroad
company owned the actual property subject to taxation
in Mississippi, an amount greatly in excess of twenty
million dollars during each of the years mentioned, and
it owned its own capital stock; it owned the property
purchased and improved by the expenditure of six mil-
lion dollars shown to have been invested in it.

It is said in the argument by appellant that because
the property of the Chicago, St. Louis & New Orleans
Railroad Company was valued and considered on the
unit basis, that this necessarily included the capital em-
ployed in the railroad business by the Illinois Central
Railroad Company, and numbers of authorities are cited
along this line.  None of these authorities, we submit, are
in point.  It may be true, so far as this particular rail-
road is concerned, that this assessment was based on the
unit system, but it does not follow that this system will
of necessity include different property of a different
railroad, and employed differently by it in business in

Mississippi. We, therefore, submit that the case should be affirmed.

*Green, Green & Potter,* also, for appellee.

*Certiorari the proper remedy and available to the appellee herein.* The first point made by appellant in its brief was that under the writ of *certiorari* the circuit court was without power to review the records and proceedings herein; or, at any rate, that the circuit court could not consider the cause as made before the tax commission, and that the tax commission's findings of the fact were conclusive upon the circuit court, and that the only judgment it could enter was one of affirmance. The leading case on the question of the power of the circuit court in reviewing decisions of the state assessors of railroads is the case of *G. & S. I. R. R. Co.* v. *Adams, State Revenue Agent,* 85 Miss. 772-794.

There is no question as to the facts of the assessment; there is no question as to the facts of the lease; there is no question as to the fact that the Illinois Central Railroad Company is engaged in business in Mississippi; and it certainly follows that if an error of law has been induced by a mistaken finding of fact—either that the Illinois Central Railroad Company had no taxable property in Mississippi; or if it did have such property, it had already been assessed for taxes—that where the facts from which the conclusion of law must be drawn are established or admitted, the state has an equal right with the railroad company to have this finding reviewed by the circuit court on the writ of *certiorari.*

Another case where the *certiorari* was granted and its use sustained by this court, was *Power, Secretary of State,* v. *Roberson, Revenue Agent,* 93 So. 769. See General heading, "*Certiorari,*" 11 C. J., page 89; *G. & S. I. R. R. Co.* v. *Adams,* 85 Miss. 772; *Robinson* v. *Mhoon,* 58 Miss. 712, 9 So. 887; 11 C. J. 87.

We therefore confidently assert that the remedy of appeal by *certiorari* from a mistaken finding of law made apparent from admitted and established facts was available to the state, and that if any error was committed by the circuit court, it was either in not making the assessment as requested or in not reversing and remanding the case to the tax commission. ·

In considering the question of whether this item of capital invested in Mississippi is taxable to the Illinois Central, it would be well to consider first the statutes relating to the taxation of railroads, the same being chapter 138, Laws of 1918, section 7769 Hemingway's Code Supp. 1921.

It has been decided by our supreme court that where a person buys a turpentine lease, giving him a right for a term of years to go upon the land of another and to there extract the crude gum from the pine trees and manufacture same into naval stores, that the value of this lease should be assessed against such person under the heading "capital engaged in business in this state," and this so even though the land upon which the timber is located has already been taxed to its owner for the full value thereof and the tax paid thereon at its full value. *Harrison Naval Stores Co.* v. *Wirt Adams, Revenue Agent,* 104 Miss. 831. In *Jones* v. *Adams;* 104 Miss. 397, it was decided that a lease was taxable *eo nomine* under similar conditions.

Now, are not the *Naval Stores case, supra,* and the case at bar identical cases? The statute with regard to the listing provides that state assessors of railroads shall prapare a roll for each county, showing all property the railroad has in each county and the value thereof, just as the law with reference to individual taxpayers or private corporations provides. The law in reference to railroads provides that the state assessors of railroads shall assess *all of the property* of railroads of affixing its true value, so that the railroads shall bear their just burden of taxes, *including the capital they have in-*

*vested in Mississippi,* while the law with reference to the taxation of individuals provides that capital invested in merchandise or manufacture shall be assessed and taxes paid thereon. The court in construing the statute in reference to private individuals and private corporations has held that where one is engaged in business and invests his money in a lease, that such lease is taxable in the county wherein such person is engaged in business as "capital invested in that business." See sections, 68 and 78, Hemingway's Code (section 4251, Code of 1906) and sections 112 and 181 of the constitution.

The supreme court of the state in the great case of *Adams* v. *Y. & M. V. R. R. Co.,* 77 Miss. 194, decided that these two sections of the constitution subjected the property of private corporations (and in that case held that a railroad company was a private corporation within the meaning of this section) to taxation, that the constitutional provision was mandatory, and self-executing, overruling the earlier cases of *Mississippi Mills* v. *Cooke,* 56 Miss. 40, and *Railroad Co.* v. *Lambert,* 70 Miss. 779, wherein it was held that the provisions of a similar section to our section 181, Constitution of 1869, merely meant that the property of such corporation was subject to taxation and not subjected to tax by the provision of the constitution itself. This being true, where the court has already decided that the capital of an individual invested in a lease is taxable as money or capital engaged in business in Mississippi, it surely follows that the capital or money of a railroad company so invested is also taxable.

But to turn to another great court, and one where the precise question was involved, to-wit, the taxability of a railroad lease under the caption of *capital invested in the railroad,* we find the supreme court of the United States directly in line with what we are contending. The case to which we refer is *Indiana & St. Louis Railroad Co.* v. *Vance,* 96 U. S. 450, 24 L. Ed. 752. Another interesting case and one quite similar to the case at bar

is that of *St. Louis & East St. Louis Elec. Ry. Co.* v.
*Hagerman,* 279 Mo. 616, 216 S. W. 762. This case was a
proceeding to tax the value of a lease or right of way,
owned by the Electric Railway Co., over a bridge across
the Mississippi River.

In *Northern Pac. Ry. Co.* v. *Morton Co.,* 32 N. D. 627,
156 N. W. 226, L. R. A. 1916 E. 494, the supreme court of
North Dakota held that where the railroad's right of
way had been valued, assessed and taxes paid upon such
assessment, that an assessment could be made against
the identical land where a third party under lease from
the railroad, had an industrial site thereon.

II.   *On the question of res adjudicata.*   It is contended
for and on behalf of the railroad company that its cap-
ital engaged in the railroad business has already been
considered by the tax commission in assessing the prop-
erty of the Chicago, St. Louis & New Orleans.   The as-
sessment toll shows on its face that the only assessment
ever made by the commission was an assessment against
the Illinois Central on account of property owned by
the Chicago, St. Louis & New Orleans Company.   The
only way that the railroad company can possibly claim
*res adjudicata,* or that its property was included in the
assessment of property owned by the Chicago Company
is a presumption that the commission so considered its
capital in fixing the assessment against the Chicago Com-
pany.   We maintain, however, that the court cannot
presume that this was done for the roll shows on its
face that the only things assessed was the property of the
lessor.   As an additional reason why no such presump-
tion can be indulged in, we cite section 4, chapter 138,
Laws of 1918, the same being found in sections 7769
and 7770, Hemingway's Code Supp. 1921, chapter 138,
Laws of 1918, where specific instructions are laid down
to the tax commission to list and value all property of
each railroad in the state.   It, therefore, becomes mani-
fest that the expressed duty is laid upon the commission
to list separately and value all property of *each* railroad

company in *each* county and where there is no listing or valuation of the value of "the capital engaged in the business," it is conclusively presumed that such a value was not considered by the commission. The leading case on the question of *res adjudicata* on the question of assessment rolls is that of *Revenue Agent* v. *Clark,* 80 Miss. 134, 31 So. 216. This case was quoted with approval in the case of *Adams, Revenue Agent, v. Peoples Bank,* 108 Miss. 347. Another case closely resembling the case at bar is the case of *Peoples* v. *Williams,* 198 N. Y. 54, 91 N. E. 256, 26 L. R. A. (N. S.) 371, where the New York Court of Appeals, the court of last resort in New York, held that although an individual owned all of the capital stock of a realty company and the corporation was merely a matter of convenience, and although the individual had paid taxes on all of the tangible property owned by such corporation, the corporation was, nevertheless, liable for a tax on its capital employed in its business.

We submit, therefore, that under the authority of sections 112, 181 of the Constitution, as construed in *Adams* v. *Railroad Company,* 77 Miss. 194, under the mandate of the statute itself; to-wit, chapter 138, Laws of 1918; under the decisions of our supreme court in the Harrison Naval Stores Co., and the Jones case; under the decisions of the supreme court of the United States in the *Indiana & St. Louis Railroad Company case, supra;* and the supreme court of West Virginia in the *Harvey Coal case, supra,* that this capital that the Illinois Central has invested in the lease is such property as under the laws of the state of Mississippi should be assessed to it for taxes. And that under the authority of the above cited cases and by virtue of the record itself, in the case at bar which shows that only the property of the Chicago, St. Louis & New Orleans was assessed, and which further shows that the only element of intangible value considered was the value of the franchise, it conclusively appears that this item for which we are now

contending tax should be paid on, was never considered by the commission, that the assessment roll in this case is not *res adjudicata* on this question and that to tax the value of its capital engaged in business against the Illinois Central would not amount to double taxation. We submit, therefore, that the case should be affirmed.

*W. S. Horton, R. V. Fletcher* and *May, Sanders & Mc-Laurin,* in reply, for appellant.

The state revenue agent attempts to answer our contention that the judgment of the state tax commission in this case cannot be reviewed by *certiorari* for the reason that the finding of said commission is a finding of fact, and relies strongly upon the case of *G. & S. I. R. R. Co.* v. *Adams, State Revenue Agent,* 85 Miss. 772, and from the opinion in that case quoted language holding that the court may by *certiorari* review a mistaken finding of fact induced by an error of law or a finding of fact contrary to law. He further asserts that there is no real question of disputed fact in this case and that the error committed by the tax commission is an error of law, but the trouble with the argument is that it ignores the finding of the commission that all the property of the Illinois Central Railroad Company has assessed and taxed heretofore.

It is earnestly contended by the revenue agent that the property actually assessed, as shown by the assessment rolls, is in fact the property of the Chicago, St. Louis & New Orleans Railroad Company. We have shown that the orders entered by the tax commission from time to time indicate an assessment against the Illinois Central Railroad Company. The state tax commission, in the order here under review, has found as a fact that the orders of assessment were against the Illinois Central Railroad Company and included all of its property, tangible and intangible, including its capital employed in the railroad business in Mississippi. No such question as this was raised or decided in the *Adams case, supra* (85 Miss. 772), upon which the state revenue

agent relies. Reference is made to the holding of the
circuit court, as shown by the opinion in *G. & S. I. R. R.
Co.* v. *Adams,* that the order of the commission in that
case should be affirmed and that a writ of *procedendo*
should issue. However, it will be observed that this deci-
sion of the circuit court was reversed by the supreme
court, so that this case cannot be taken as authority for
the circuit court to issue a writ of *procedendo.* We do
not see that the case of *Power, Secretary of State* v.
*Robertson,* 93 So. 769, has any bearing whatever upon
the question of proper proceeding in this case.

Upon the merits, an important part of the argument
turns upon the fact that the Illinois Central Railroad
Company is one corporation and the Chicago, St. Louis
& New Orleans Railroad Company is another. It is
stated, therefore, that the assessment rolls upon which
the state revenue agent depends largely for his argu-
ment show that the only property actually assessed was
that owned by the Chicago, St. Louis & New Orleans
Railroad Company. It is argued that the only property
assessed was the tangible and physical property of the
Chicago, St. Louis & New Orleans Railroad Company, but
it is admitted that the assessment was made against the
Illinois Central Railroad Company. It is clear that if
the orders of assessment, as distinguished from the
assessment rolls, are to be taken as controlling, then this
suit must fail, since the question is concluded by the
previous action of the state tax commission.

The legislature of Mississippi has provided for a
special mode of valuation and assessment for railroads,
and railroad and other corporate property, etc., which
special mode is prescribed by sections 7021 to 7030, in-
clusive, of Hemingway's Code Supplement, governing
the assessment of railroads and railroad property for
the year 1917; and sections 7769l to 7769r, governing the
assessment of railroads and railroad property for the
years 1921 and 1922.

If we concede for the purpose of argument, that the
assessment is in fact upon property of the Chicago, St.

141 Miss.—16.

Louis & New Orleans Railroad Company, manifestly, the state tax commission took into consideration in fixing the value of this property all the capital employed in the railroad business conducted by the Illinois Central Railroad Company. The argument of appellee overlooks and ignores the fact that in Mississippi a railroad is assessed as a unit, as a going concern, without reference to any technical question as to ownership and without reference to the assessment of any particular element or species of property, tangible or intangible, except that every element involved in railroad operation shall be taken into consideration in assessing to the owner, to the lessee, to the receiver, to the United States Government, or to anyone else operating the property. The ownership of the railroad is not important. That question never enters into the assessment of railroad property for taxation in Mississippi. See section 6886, Hemingway's Code. It has been said by a great authority upon the subject that the object of a government is not to tax names but to tax property. We again call attention in connection with this question of ownership to the opinion of the court of appeals of Kentucky, in *Commonwealth v. Ingall,* 121 Ky. 194.

Reference is also made to the turpentine lease cases decided by our court. We have discussed in our brief to some extent the obvious distinction between these lease cases and the case at bar, in view of the different mode for assessing railroad property and other property in the state. In the turpentine lease cases there was standing timber, constituting no business, performing no service, having an inherent and an intrinsic value, and nothing that was paid for the property employed in the independent business of manufacturing the by-products of the timber was added to any established business, but constituted a separate and independent operation, reducing the value of the original estate, and in the establishment of that new and independent business and for the protection guaranteed to that new and independent industry, the state was entitled to claim its revenue for the

protection which it afforded. In this case, far different. The agreed statement of facts shows that every nickel the Illinois Central had invested in railroad business was invested in maintaining, improving and operating the property of the Chicago, St. Louis & New Orleans Railroad Company, a public service corporation engaged in moving the commerce of the country. All the money that the Illinois Central Railroad Company put into the railroad business in Mississippi went into that railroad and was reflected by constantly increasing valuation in the assessment of that railroad; a permanent investment in the state in the form of physical railroad property covered by the numerous elements of property specified in the schedule of railroad property under discussion. It is a fact, which this court knows in every way possible, that the bleeding of the pine trees would of necessity in a few years result in denuding the pine forest of all the tax value bound up in the standing trees—all as a result of a new industry coming into the state and operating its factories, with its offices and officers established in its bounds. But, in the instant case, the state instead of being robbed of its revenue on the original estate, is building up its revenue in the increased value of its original estate, the increased value coming as the direct result of investing the Illinois Central Railroad Company's capital, employed in railroad business in Mississippi, in the physical property of the Chicago, St. Louis & New Orleans Railroad Company, assessed for taxes against the Illinois Central Railroad Company and the taxes paid in accordance with the assessment.

Argued orally by *R. V. Fletcher*, for appellant, and *Chalmers Potter*, for appellee.

Ethridge, J., delivered the opinion of the court.

(After stating the facts as above.) The appellant assigns numerous errors in the holding of the court below, among which are: That the court erred in sustaining the

motion of the revenue agent that the order of the state tax commission be canceled, annulled, set aside, and held for naught; that the court erred in requiring the clerk to certify to the tax commission its finding and opinion; that the court erred in awarding costs against appellant in the circuit court; that the court erred in holding that the state revenue agent had brought to the attention of the tax commission any property belonging to appellant which had escaped taxation for the years 1917, 1921, and 1922, the court below having found that during the years 1918, 1919, and 1920 such line of railroad was operated by the Director General of Railroads, and that the railroad company was not assessable for tax during such years on that account; that the court erred in holding that the assessment by the tax commission, made for the years 1921 and 1922, was not *res adjudicata,* and for making a like holding for the year 1917, as to the assessment by the Railroad Commission, which, at that time, was state assessor of railroads; that the court erred in not holding that the notice given by the state revenue agent and the tax commission was void for uncertainty of the description of the property.

Section 112 of the Constitution of 1890 reads as follows:

"Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. The legislature may, however, impose a tax *per capita* upon such domestic animals as from their nature and habits are destructive of other property. Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county. But all such property shall be assessed at its true value, and no county shall be denied the right to levy county and special taxes upon such

assessment as in other cases of property situated and assessed in the county."

This section authorizes the legislature to provide for a special mode for the valuation and assessment of railroad and other similar property. In pursuance of this power, the legislature has enacted a special scheme for assessing railroads, which for the year 1917 was done under section 7021, Hemingway's Code (chapter 247, Laws of 1914, amending section 4382, Code of 1906). By section 7023 of Hemingway's Code (section 4384, Code of 1906), the state Railroad Commission was made state railroad assessors, and, these sections being in force at the time the assessment of 1917 was made, constitute the law applicable to that assessment. In 1918, the legislature by chapter 138, Laws of 1918 (section 7769*l*, Hemingway's Supplement 1921), constituted the state tax commission, state assessors of railroads, and other public service corporations. By section 7769m, Hemingway's Supplement 1921 (chapter 138, Laws of 1918, section 2), the scedule was provided to be made for the state assessing board by the railroad upon which the assessment of railroad property was to be made. These last sections are substantially the same as the Laws of 1914 (Hemingway's Code), *supra.* The differences between the law applicable to 1917 and the other years involved do not materially affect the decision of the case.

Section 7769*l*, Hemingway's Supplement 1921, reads as follows:

"The members of the state tax commission are constituted state assessors of railroads and other public service corporations, and they shall, upon the receipt or making of the schedules hereinafter provided for, assess the property of railroad, telegraph, telephone, sleeping car, express company and other public service corporations liable to taxation in the state, affixing its true value so that such property shall bear its just proportion of taxation, taking into consideration the value of the franchise, the capital stock engaged in the busi-

ness in this state; and the state assessors of railroads and other public service corporations may adopt other and further rules necessary and proper to ascertain the value of property to be assessed by them, including the amount of capital engaged in the business in this state.''

Section 7769m, Hemingway's Supplement of 1921, reads as follows:

''Each railroad company owning and operating a railroad, shall, on or before the first Monday in April, in each year, file with the state tax commission, a complete schedule, under oath, of all its property, real or personal, taxable and nontaxable, setting forth therein the length in miles or fractions thereof, of its entire roadbed, switches and side tracks, and showing how many miles or fractions thereof lie in this state, and each county of the state, and in each city, town, village, levee district, road district, and in each separate or consolidated school district, and where a separate school district is composed in part of the corporate limits of a city, town or village, and in part of separate, adjacent annexed territory, then in that event, what part of its roadbed, switches and side tracks lie in such separate, adjacent annexed territory so constituting a part of such separate school district, and the value of the whole and each part thereof, as subdivided herein; the total amount of capital stock, its par value and its actual value, and the value of its franchise, the number of engines and their respective values; the gross amount of receipts in the year preceding; the number of cars of all kinds, their class and value; the number of depot buildings and warehouses and other buildings; in what county, and city, town, village, levee district, road district or separate or consolidated school district, and the value of each, including the lands and lots upon which the same are built; the value of all machinery and car shops and stationary machinery and tools therein, and in what county and city, town, village, separate or consolidated school district, road district, or levee district located, including the lands

upon which the same are built; all real, personal or mixed property belonging to the company within the state, not enumerated, with its value; the number of bridges and ferries, in this state, in what county and city, town, village, separate or consolidated school district, road district, or levee district located and the value of each, and specifying whether such value is or is not included in the value of the road bed; a list of all lands in this state owned, describing the same and giving the location and value thereof, the quantity of land used for depots and machine shops, and its value aside from the buildings thereon; the gross amount of receipts the year preceding from passengers and freight separately, and the proportion thereof earned within and from this state, and if any of said property is claimed to be exempt from taxation, it shall be separately stated and the law cited under which the claim is made.''

It will be seen from these sections that the state tax commission, in the years in which it assessed and the state railroad commission as state assessor, in 1917, were required to take into consideration the value of the franchise and capital stock engaged in business in the state, and the amount of capital engaged in business in the state. It will be further seen from the reading of these sections that the railroad is required to render a complete statement of all its property, real or personal, taxable and nontaxable, and the value of the latter and of each part thereof, the total amount of its capital stock, its par value and its actual value and the value of its franchise, the gross amounts of receipts for the preceding year, and the various amounts and kinds, and the value of its other physical property. The state also provides for notice of hearing of said assessments and the objections thereto.

Section 73, Hemingway's Code, reads as follows:

''Like proceedings as provided in the last section [section 72 which see] may be had to review the judgments of all tribunals inferior to the circuit court, wheth-

er an appeal be provided by law from the judgment
sought to be reviewed or not."

In *Gulf & Ship Island Railroad Co.* v. *Adams, State
Revenue Agent,* and *Yazoo & Mississippi Valley Rail-
road Co.* v. *Adams, State Revenue Agent,* 85 Miss. 772,
38 So. 348, it was held that the Railroad Commission is
an inferior tribunal within the meaning of these sections,
and *certiorari* may be had to review the tribunals in-
ferior to the circuit court; that *certiorari* lies to correct
mistaken findings of fact by the Railroad Commission,
induced by error of law apparent on the record, the find-
ing of a fact contrary to law, or the making of an order
beyond its power. It was also held in that opinion that,
where the railroad assessors have assessed railroads for
*ad valorem* taxes pursuant to the laws then in force,
making it their duty to take the value of their franchises
into consideration, and where the taxes have been paid,
the assessment is conclusive in the absence of fraud.

In the course of the opinion in that case, the court said:

"Appellee undertakes to escape the force of this rea-
soning by contending that the franchise here sought to
be taxed is property; that a privilege tax is ultimately
a tax upon the use of the property, and is, in effect, a
tax upon the property. We do not concur in this, but
hold that the tax sought to be collected is a privilege tax
proper. But, if appellee's contention in this regard were
correct, and the tax sought to be collected were indeed
essentially a property tax, still the commission would be
estopped now to back-assess this franchise for a prop-
erty tax. It is a matter of which this court will take
judicial notice that these railroads were assessed for *ad
valorem* taxation, for the years 1898 to 1903, agreeable
to provisions of Code 1892, section 3877, and that they
have paid the taxes assessed against them. It was by
the statute made the duty of the railroad assessors,
in fixing the assessments of the said railroads, to take in-
to consideration the value of the franchise; and by the
franchise, in this connection, we understand the right of

the railroad companies to operate their railroads in the manner, on the conditions, and with the powers prescribed and granted in their several charters. They are conclusively presumed to have taken the value of the franchise into consideration in fixing the assessment of these railroads for the years in question, and this cannot now be questioned in any tribunal. It is *res adjudicata.* It has been expressly adjudicated by this court that, as to all other matters (than exemptions) in the assessment and valuation of the property of railroads, the judgment of the railroad assessor is conclusive. *Railroad Company* v. *Adams,* 81 Miss. 105, 32 So. 937. See, also, especially, *Railroad Company* v. *Adams,* 77 Miss. at p. 778, 25 So. 355, and note authorities there quoted. But, of course, this doctrine is not to be extended to assessments procured to be made by fraud nor to assessments made in conscious and deliberate defiance of law. As to all such, whether the property withheld from or escaping assessment be franchise or other property, we adhere to and reaffirm the wholesome doctrine announced in *Revenue Agent* v. *Clarke,* 80 Miss. 134, 31 So. 216. The franchise of these railroads having been assessed for *ad valorem* taxation (and for this, in the absence of fraud and the like, as indicated, we have a conclusive presumption of law), it is not now in the power of the railroad assessors to single out some constituent element of their franchise, or some mere incident thereto, and impose an *ad valorem* or property tax upon it. This would be double taxation and violative of the constitutional provision that taxation shall be equal and uniform.''

In *Adams* v. *Clarksdale,* 95 Miss. 88, 48 So. 242, the court was called upon to deal with a suit brought by the state revenue agent against the city of Clarksdale and the city tax collector of that city. The board of mayor and aldermen at its March session approved an assessment made by the city authorities. In May, the board of mayor and aldermen undertook to cancel the assessment made in March and to make a new assessment.

This court held, under section 4296, Code of 1906, that, where an assessment roll had been properly approved, the taxpayer is precluded from questioning its validity afterwards, and the effect of the approval is to render it final against taxpayer, unless subject to be reopened under section 4312, Code of 1906, and that said judgment rendered approving an assessment is more open to further action than is that of any other tribunal. To the same effect, the court held in *North* v. *Culpepper*, 97 Miss. 730, 53 So. 419; *Miller* v. *Copeland*, 104 So. 176; *Adams* v. *Luce*, 87 Miss. 220, 39 So. 418.

In *Western Union Telegraph Co.* v. *Kennedy et al.*, 110 Miss. 73, 69 So. 674, the court held that *certiorari* was the proper remedy available to the taxpayer to review an assessment made by the state Railroad Commission (then acting as state assessor), and that such assessment was binding upon the person assessed as to ownership of property, unless he availed himself of the remedy provided by *certiorari* under section 73 of Hemingway's Code, *supra,* and that an injunction would not lie under section 533, Code of 1906, to enjoin an assessment so made. Both the case of the *Gulf & Ship Island Railroad* v. *Adams,* 85 Miss. 772, 38 So. 348, and the *Western Union Telegraph Company* v. *Kennedy, supra,* held that the state tax assessor, in assessing and valuing property, was acting in a *quasi*-judicial capacity, and *certiorari* would lie to review its judgment. See, also, *Forest County* v. *Melton,* 123 Miss. 615, 86 So. 369; section 61, Hemingway's Code; section 81, Code of 1906; section 156 of the state Constitution.

We think that the authorities above cited show that, where property is brought before the assessing board or authority, and where it has made an assessment upon the statement rendered in compliance with law, that the assessment so made is binding and conclusive, unless the statute gives some board, or officer, or court the power to review it and change it, and unless it falls

within the exceptions noted in these cases, none of which exceptions, we think, are applicable to the present case.

It is manifest, from the consideration of the statutes above set out, that it was the purpose of the legislaure to assess railroads on the unit basis in order to reach their value, and the tax assessors charged with the duty of assessing them reached their conclusion of value as a whole by considering all of the matters returned in the schedule together, taking all of the kinds of property and value, as well as the franchise and capital employed in business, into consideration, and forming their judgment thereon. It, of course, would be possible for the legislature to enact a different scheme, and, if a different scheme were enacted, then the provisions of said scheme would control. All the legislature intends for the property owner to do is to bring all of its property to the attention of the assessing board or body and disclose the things required by law. It then becomes the duty of the assessing body to find its value and make up the assessment roll reflecting that value. It is true that the property placed on the roll names specific things, to-wit: First, main track; second, second main track; third, side track; fourth, depots; fifth, cotton platforms; sixth, stock pens; seventh, toolhouses; eighth, water stations; ninth, coal-chutes; tenth, warehouses; eleventh, section houses; twelfth, machine shops; thirteenth, signal towers; fourteenth, telephone booths; fifteenth, tools; sixteenth, office furniture; seventeenth, material and supplies; eighteenth, real estate—with the notation at the botton of the roll, "Main track includes value of waylands, station grounds, yards, roadbeds, bridges, rolling stock, telephone and telegraph, and franchise." The assessment made must be interpreted in the light of the statutes and the returns required to be made by the statutes above set out, and, when an assessment is made on returns made in accordance with the statutes, we must construe the assessment to contain all of the items brought to the attention of the Railroad Commission by

the returns made, considering them as being integrated into the assessment.

It would be manifestly inconvenient to have a roll list of the various items of property and value shown in the return, and the statute does not contemplate this. The assessor assesses the railroad as a unit, and it is not necessary for the roll to show all of the items shown on the return. The cases relied on by the appellee to sustain his position (taxing private corporations and individuals) are not applicable here, for the reason that the special scheme of assessment provided by the legislature is different from that of individuals and private corporations. Individuals are assessed upon items reflected by the assessment roll and the list required to be returned by individuals. In the case of railroads, it is manifest that the railroad assessors knew that the Illinois Central was operating the line of railroad assessed upon the rolls, and that it was the lessee of the property and franchises of the Chicago, St. Louis, & New Orleans Railroad, and that the assessment returned by the railroad reflected all of the things contemplated in the return required to be made. It assessed itself with the entire property, although the roll shows that the line was owned by the Chicago, St. Louis & New Orleans Railroad.

In the view that we have taken of the matter, it is not necessary to consider what practice would be proper or what power the circuit court would have to try the cause *de novo,* or whether the circuit court would have power to remand it to the tax commission for further proceedings, should it find it necessary to reverse the judgment of the tax commission. We are of the opinion that the Railroad Commission properly refused to make the assessment, and that the circuit court erred in holding the railroad liable to back assessment on the fact contained in this record. The court here is in agreement with the tax commission and the attorney-general upon the law, and the circuit court judgment will be reversed,

and judgment rendered affirming the judgment of the tax commission.

Reversed, and judgment here for appellant. Affirmed on cross-appeal.

*Reversed.*
*Affirmed.*